PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KCI USA, INC.,                          )
                                        )    CASE NO. 1:14CV549
            Plaintiff,                  )
                                        )
    v.                                  )    JUDGE BENITA Y. PEARSON
                                        )
HEALTHCARE ESSENTIALS, INC., *et al.*,  )
                                        )
                                        )
                                        )
                                        )    **FINDINGS OF FACT AND**
                                        )    **CONCLUSIONS OF LAW**
            Defendants.                 )    [Resolving ECF Nos. 269, 355, and 359]


        Pending, in this aged and hotly contested case, is Plaintiff KCI USA, Inc.'s Motion for

Order to Show Cause (ECF No. 269).[1]  After notice to the parties, the Court held a hearing on the

motion.  The Court has been advised, having reviewed the parties' briefs, evidentiary

submissions, the applicable law, and oral arguments of counsel, enters its findings of fact and

conclusions of law in support of its determination that case-terminating sanctions in the form of

default judgment on all counts in Plaintiff's Third Amended Complaint (ECF No. 276) against

Defendants Healthcare Essentials, Inc., Healthcare Essentials, LLC, Healthcare Essentials

Medical Devices, LLC, RT Acquisition, Inc., Ryan Tennebar, and Colin Tennebar (collectively,

"Defendants") are warranted.  For good cause shown, the motion is granted.

---

        [1] This case has received attention from three federal judges, myriad counsel, and
been stayed to accommodate a criminal prosecution of one of the defendants.

(1:14CV549)

Also pending are Plaintiff's Motions for Default Judgment against Defendants Daniel Rader, Anthony Estrada, and Abel Cortez (the "Texas Defendants"). ECF Nos. 355 and 359. For the reasons stated below, the motions (ECF Nos. 355 and 359) are also granted.

## I. FINDINGS OF FACT

### A. The Parties

1. Plaintiff KCI USA, Inc. ("KCI") is a corporation organized under the laws of the State of Delaware, having its principal place of business in San Antonio, Texas. ECF No. 276 at PageID#: 4932, ¶ 2. KCI is a global medical technology company with leadership positions in advanced wound care therapeutic services. *Id.* KCI markets, distributes and services V.A.C. System units ("VACs") throughout the United States to a variety of healthcare facilities. *Id.* at PageID#: 4934, ¶ 17.

2. Defendant Healthcare Essentials, Inc. is a corporation organized under the laws of the State of Ohio, having its principal place of business in Ohio. *Id.* at PageID#: 4932, ¶ 3. Defendant Healthcare Essentials, LLC is a limited liability company formed under the laws of the State of Ohio, having its principal place of business in Ohio. *Id.* at ¶ 4. Defendant Healthcare Essentials Medical Devices, LLC is a limited liability company formed under the laws of the State of Ohio, having its principal place in Ohio. *Id.* at ¶ 5. Defendant RT Acquisition, Inc. is a corporation organized under the laws of the State of Ohio, having its principal place of business in Ohio. *Id.* at PageID#: 4933, ¶ 6. RT Acquisition, Inc. is the parent company of Defendants Healthcare Essentials, LLC and Healthcare Essentials, Inc. *Id.* Defendant Ryan Tennebar is the Director of Operations of Healthcare Essentials. *Id.* at ¶ 7; Hearing Ex. 9.

3. Healthcare Essentials has been in business since at least 2008 and was or is "owned by both Ryan and Colin Tennebar" who have identified themselves as "a package deal" for business purposes. Hearing Exs. 45 and 88. Healthcare Essentials' 2014 tax return lists Colin Tennebar as its sole shareholder, possessing a 100% interest in Healthcare Essentials, Inc. ECF No. 64-7 at PageID#: 769.

4. Defendant Abel Cortez, who resides in El Paso, Texas, is a former Temporary Process Technician at KCI and worked at KCI from June 2014 to October 2014. ECF No. 276 at PageID#: 4933, ¶ 9. Defendant Daniel Rader, who resides in El Paso, Texas, is a former Field Service Representative I at KCI. *Id.* at ¶ 10. Defendant Anthony Estrada, who resides in El Paso, Texas, is a former Field Service Representative I at KCI. *Id.* at ¶ 11.

**B. Relevant Factual and Procedural Background**

5. On March 12, 2014, Plaintiff KCI filed its original Complaint. ECF No. 1. Defendant Healthcare Essentials, LLC subsequently filed Counterclaims against Plaintiff. ECF Nos. 10 and 85. KCI's Third Amended Complaint, filed on February 23, 2017 and pursuant to the Court's leave, seeks relief against Healthcare Essentials, Inc., Healthcare Essentials, LLC, and Healthcare Essentials Medical Devices, LLC (collectively, "Healthcare Essentials"), RT Acquisition, Inc., Ryan Tennebar, Colin Tennebar, Abel Cortez, Daniel Rader, and Anthony Estrada. ECF No. 276.[2]

---

[2] KCI's Third Amended Complaint alleges causes of action against three additional Defendants, Abel Cortez, Daniel Rader, and Anthony Estrada, *i.e.* the Texas Defendants. ECF No. 276. KCI's Motion to Show Cause (ECF No. 269) does not seek relief against the Texas Defendants. KCI motion for default judgment against the Texas

(continued...)

6. In its Third Amended Complaint, KCI alleges that Defendants stole KCI V.A.C.® System units and built an entire enterprise from that theft. *See* ECF No. 276. Accordingly, the Third Amended Complaint asserts causes of action for violations of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02; for conversion under Ohio common law; for unfair competition under Ohio common law; for tortious interference with a prospective business relationship under Ohio common law; for civil theft under Ohio Revised Code § 2307.60 and § 2913.51; for replevin under Ohio law, for unfair competition under § 43(a) of the Lanham Act, for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* and the Ohio Corrupt Activities Act ("OCA"), O.R.C. 2923.31 *et seq.*, and; for a permanent injunction. *Id.*

7. On January 9, 2017, KCI filed a Motion to Show Cause and Request for Discovery Hearing arising out of Defendants' spoliation of evidence. ECF No. 269. On November 9, 2017, the Court held a hearing on Plaintiff's Motion to Show Cause (ECF No. 269) regarding Defendants' discovery abuses and violations. Following the hearing, the Court permitted the parties to file simultaneous post-hearing briefs. ECF Nos. 338, 339, 340. As set forth below, the Court finds that Defendants committed the following discovery misconduct.

### 1. Discovery Violations

8. Defendants Ryan Tennebar and Colin Tennebar's discovery responses to KCI's discovery requests, seeking information as to: whom Defendants had required KCI VACs, the

---

[2](...continued)
Defendants, *see* ECF Nos. 355 and 359, is discussed in further detail below.

price paid for each, at which healthcare facilities they had been used, and the serial numbers of the VACs, were woefully incomplete. *See e.g.*, ECF 167-8; *see also* ECF Nos. 167-10, 167-15 (pursuant to the Court's June 30, 2016 Order, KCI submitted a memorialization of the discovery status among the parties). As a result, KCI was prompted to notify the Court in a February 16, 2015 letter, which sought the production of all of the information requested by KCI. ECF No. 42-5; Hearing Exs. 72 and 76.

9. On March 13, 2015, KCI filed a Motion for Sanctions due to Defendants' failure to comply with the Court's Orders (ECF Nos. 40 and 41). ECF No. 42. On April 8, 2015, Defendant Ryan Tennebar submitted a false affidavit seeking to defend against KCI's Motion for Sanctions, in which he attested that: (1) "Healthcare Essentials has disclosed to KCI all relevant information and documentation that it had within its knowledge, possession, custody or control;" (2) "[b]ecause Healthcare Essentials was not in existence form [sic] 2007 through 2011, it has no records for that period to produce to KCI;" and, (3) "I can attest that Healthcare Essentials conducts business mostly on verbal agreements. But it provided to KCI all of the written contracts with its customers that it had in its possession, custody or control." *See* Hearing Ex. 91, ¶ 9.

10. Despite the Court's Orders and Defendants' representations, Defendants failed to disclose responsive communications and documents spanning a period of nearly a decade. *See e.g.*, Hearing Exs. 1 – 8, 17 – 23, 54, 56 – 58, 62 – 65. As evidenced in the examples provided below, many of these communications go directly to the heart of KCI's claims of theft, fraud, misrepresentations in the marketplace, and customer confusion. All undisclosed

communications identified herein and introduced at the Show Cause hearing were acquired by KCI in third-party discovery and via subpoenas. *See* ECF No. 331 at PageID#: 5736.

### i. Undisclosed Communications and Documents[3]

11. Defendants failed to produce blog posts dating back to 2008 demonstrating that Healthcare Essentials advertised its rental services for KCI VACs and other products during and before that time period. Hearing Ex. 1 ("You are able to rent Wound VACS through a GPO called Healthcare Essentials at half the cost.").

12. Defendants failed to produce an e-mail dated December 6, 2011, in which Ryan Tennebar represents to a third party that he had forty-four (44) KCI VACs in his inventory and that he "received them from Canada." Hearing Ex. 7.

13. Defendants failed to produce an e-mail dated December 9, 2011, in which Ryan Tennebar e-mailed Colin Tennebar and other Healthcare Essentials employees stating that there was "a $240,000 annual account for us I just closed. All of these homes are very high acuity and run between 8    12 VACS at any given time." Hearing Ex. 8. In providing this information, Ryan Tennebar asked Colin Tennebar how he wanted to proceed. *Id.* The e-mail also contains Ryan Tennebar's communication with Healthcare Essentials' customer, in which he offered "$70/Day for the KCI VAC Fleet as first available" and represents that "[t]he Smith and Nephew VAC and KCI VAC Therapy are exactly identical to one another." *Id.*

---

[3] These communications establish that Healthcare Essentials was, indeed, doing business prior to 2012 and was and is in possession of responsive documents and information from the time period of at least 2008    2011. The Court notes that these are only a few of the multitude of such undisclosed communications. *See* Hearing Exs. 2, 3, 4, 6, 9, 10, 24, 32, 37, 38, 42, 51, 53, 55, 57, 63, 84, 94, and 126.

14. Importantly, all of the above communications occurred prior to 2012 and during the time period in which Ryan Tennebar testified that Healthcare Essentials was not in business and did not exist. Hearing Ex. 91. Furthermore, Defendants failed to produce an email communication dated March 10, 2014 from Ryan Tennebar to a healthcare facility, in which Ryan Tennebar states as follows:

> "We have been in business for six years. We import our inventory and have a direct supply channel with both KCI and Smith and Nephew. In Ohio alone, we have over 200 customers from NFP chains to FP customers. I work with KCI Corporate on a higher level than a field services rep because of the home-care business I generate for them. Nothing is illegal about this operation."

Hearing Ex. 48.

15. Furthermore, Defendants failed to produce an e-mail dated October 10, 2012 that was sent to Ryan Tennebar, containing a list of KCI supplies available for acquisition. Hearing Ex. 12.

16. Defendants failed to produce an e-mail dated October 18, 2012, in which Ryan Tennebar states to a customer that a "KCI VAC was dropped and it snapped the power port out of the device," that "KCI didn't pick-up their two KCI VAC Freedoms so we placed one of their KCI VAC Freedoms on [a patient] so he could resume VAC Therapy," and requested that the customer "make certain KCI suspends your billing for [a patient] because ours was placed 10/16/2012." Hearing Ex. 13.

17. Defendants failed to produce a contract between Healthcare Essentials and a third-party healthcare facility dated December 14, 2012, signed by Ryan Tennebar. Hearing Ex.

16.  The contract provides that Healthcare Essentials was to provide "KCI Portable VAC 'Freedom'" devices and "all necessary . . . KCI Wound VAC components[.]"  *Id.*

18.  Defendants failed to produce an email dated February 27, 2013 from Ryan Tennebar, in which he states that Healthcare Essentials "is the only company in the USA that distributes Smith and Nephew Renasys and KCI to Hospitals, LTACS and Long-Term Care Facilities . . . We have one primary supplier in another country for our KCI inventory."  Hearing Ex. 31.

19.  Defendants failed to produce an email dated June 2, 2013 from Ryan Tennebar to Colin Tennebar, in which Ryan Tennebar forwards e-mails between himself and a KCI representative regarding the purchase of Healthcare Essentials' VAC Division.  Hearing Ex. 38.

20.  Defendants failed to produce an e-mail communication dated December 10, 2013 from Ryan Tennebar to a KCI representative, in which Ryan Tennebar states "Colin and I really would like to work together and come to some sort of an agreement . . . Colin and I are twins and a package deal."  Hearing Ex. 45.

21.  Defendants failed to produce an e-mail dated July 11, 2014 from Ryan Tennebar to a third-party representative at a healthcare facility, in which he responded to allegations of expired KCI supplies and wound kits that Defendants relabeled with other expiration dates.  Hearing Ex. 56.  In the e-mail, Ryan Tennebar states "[w]e receive thousands of kits per month from the KCI manufacturing plant, to a third party distributor and then to me . . . We had an issue with strictly our white foam and that was field destroyed months ago."  *Id.*

22.  Defendants failed to produce an e-mail chain dated November 24, 2014 from Ryan Tennebar to a Healthcare Essentials customer, in which the customer's representative stated that

she "personally saw expired dressings, as well as there were other concerns.  We also have discussed numerous times of you guys taking a KCI vac which has never been brought back." Hearing Ex. 66.

23.  Defendants failed to produce an "Executive Summary" dated March 28, 2015, that was saved on Healthcare Essentials' office computer in which Defendants summarized the formation and business operations of Healthcare Essentials.  Hearing Ex. 88.  The Executive Summary boasts "$2 Million in revenue" and states that: Healthcare Essentials "is owned by both Ryan and Colin Tennebar with each having a fifty percent equity in the company.  We are identical twin brothers and work together through our different partner channels to make this operation both clinically sound and financially successful." *Id.*  The Executive Summary also states that "[f]rom January 2013 to January 2014 the [negative pressure wound vacuums therapy] ("NPWT") line grew over 100% during the course of that calendar year." *Id.* (alterations added).

24.  Defendants failed to produce an e-mail dated August 17, 2015 from Ryan Tennebar to Healthcare Essentials' employees and Colin Tennebar.  Hearing Ex. 119.  In the e-mail, Ryan Tennebar states that Healthcare Essentials is "merging forces with Healthcare Essentials South with Phil [Alhir] and Derek's team," whose "multiple businesses exceeds $20 Million dollars annually." *Id.*  Healthcare Essentials South is a former defendant in this case that agreed to entry of a permanent injunction in KCI's favor.  ECF No. 161.

25.  Defendants failed to introduce an e-mail dated November 24, 2015 from a Healthcare Essentials' customer to Phillip Alhir and Ryan Tennebar, in which the customer states "[w]e

received 3 [KCI] activacs instead of 2! The condition of 2 was deplorable and marla said she would not want to put on anyone." Hearing Ex. 126.

26. Defendants failed to produce numerous communications between Defendant Ryan Tennebar and *pro se* Defendant Abel Cortez, who is a former Temporary Process Technician at KCI. ECF No. 331 at PageID#: 5783. These undisclosed communications establish that a clear pattern and scheme through which Ryan Tennebar acquired stolen KCI VACs, supplies, and VAC security codes from Defendant Abel Cortez. *See* Hearing Exs. 17 23, 25 28, 30. The undisclosed communications include:

(1) an email dated January 11, 2013, in which Defendant Cortez attaches a "pic of the FedEx receipt with tracking # for the 4 vacs" he sent to Ryan Tennebar. Hearing Ex. 17. Ryan Tennebar responds that he needs "those service passcode for each vac so when the timer locks it up I'm not screwed. Your buddyy [sic] knows what I'm talking about." *Id.*; and,

(2) an e-mail chain also dated January 11, 2013, in which Abel Cortez states that he has "the codes . . . $100 each," and Ryan Tennebar responds "[p]lease help for another $100. I have a VAC Freedom that needs reset. Can you ask your friend very quickly how to reset a VAC Freedom and which buttons to press please." Hearing Ex. 18. Healthcare Essentials needed the "codes" to restart VACs that had shut down because they had not been cleaned or serviced by Defendants.

27. Defendant Colin Tennebar stored KCI-related records at his residence well after the Injunction Orders were issued and attempted to show these records to law enforcement on April 12, 2017. *See* Hearing Ex. 157.

### ii. Fabricated Invoices and Inventory Spreadsheets Produced in Discovery and Filed With the Court

28. Defendants created and submitted false invoices and inventory spreadsheets of Healthcare Essentials' KCI VAC inventory to demonstrate legal purchases of KCI VACs to the Court and in response to KCI's discovery requests. *See* ECF No. 328-1 at PageID#: 5693 94 (former Healthcare Essentials employee, Rose Edgar, testified that Defendant Ryan Tennebar requested that she create fictitious invoices to demonstrate purchases of KCI VACs); ECF No. 333-4 at PageID#: 5954 56 (Defendant Ryan Tennebar testified at his September 1, 2016 deposition that the lists of KCI VACs and inventory spreadsheet Defendants produced to KCI and submitted to the Court were "not legitimate" and "fabricated.").

### 2. Defendants' Violations of the Court's Injunction Orders

29. On July 1, 2016, the Court granted KCI's Motion for a preliminary injunction and enjoined Defendants from (1) representing that they were in any way affiliated with KCI; and from (2) marketing, distributing, selling, leasing, servicing, obtaining, or otherwise disseminating any KCI VAC Therapy System and any other KCI products related to that therapy system. ECF No. 162.

30. On July 21, 2016, KCI filed an Emergency Motion to Show Cause based on evidence that Healthcare Essentials had violated and was in continued violation of the preliminary injunction order. ECF No. 177. On August 5, 2016, and following a hearing on KCI's Motion, the Court held Defendant Ryan Tennebar in civil contempt for violations of the preliminary injunction order, as well as for Defendants' failure to produce a list of all "VAC's in use." ECF Nos. 182 and 208.

31. In response to the Court's multiple Orders (June 30, 2016 Minutes of Proceedings; ECF Nos. 168, 171, 182), Colin Tennebar executed a false affidavit attesting that "Defendants' Supplement to Plaintiff's Memorialization of Discovery Status is true and accurate," and that "Health Care Essentials, Inc. and Healthcare Essentials, LLC have fully and truthfully answered all of KCI USA's discovery requests." *See* ECF No. 203. The Court subsequently released Ryan Tennebar from federal custody on August 8, 2016. ECF No. 216.

32. On August 9, 2016, the Court issued an Amended Injunction Order based on a stipulation of the parties, enjoining Defendants from marketing, distributing, selling, leasing, servicing, or otherwise disseminating any device or product to treat patient wounds in a hospital, post-acute setting, nursing home facility, home care, or any other treatment facility. ECF No. 218. The prohibition specifically included treatment of wounds with negative pressure wound therapy ("NPWT") devices or products including, but not limited to devices or products manufactured by KCI, Smith & Nephew, Medela, or any other manufacturer. *Id.* at PageID#: 4075. The Amended Injunction Order required Defendants to remove all NPWT devices from the market by 12:00 p.m. on August 15, 2016. *Id.* at PageID#: 4075    76.

33. On August 16, 2016, the Court issued a Modified Amended Injunction Order, extending the deadline for Defendants to remove their NPWT devices from the market to August 25, 2016. ECF No. 226. All remaining prohibitions in the July 1, 2016 Preliminary Injunction and the Amended Injunction Order remained intact. *Id.* The Court's preliminary injunction orders (ECF Nos. 162, 218, 226) are collectively referred to as the "Injunction Orders."

34. On August 26, 2016, KCI filed a Motion to Show Cause for additional violations of the Court's Injunction Orders and for other discovery violations by Defendants. ECF Nos. 177, 243. The Court's September 23, 2016 Order, put Defendants on notice that, "should the Court find by clear and convincing evidence any violation of court orders, the Court will impose any sanction it considers appropriate, including but not limited to adverse inferences; prohibiting Defendants from supporting or opposing designated claims or defenses; prohibiting introduction of designated matters into evidence; entering default judgment against Defendants and in Plaintiff's favor on Plaintiff's claims[.]" ECF No. 250 at PageID#: 4628.

35. Despite numerous Court Orders prohibiting Defendants from conducting business and selling medical devices, while litigation was pending, Defendants continued to sell medical products to healthcare facilities after the Amended Injunction Order and Modified Amended Injunction Order. *See* Hearing Exs. 144   47. Ryan Tennebar's PayPal records also show purchases of NPWT products following the Injunction Orders from July 1, 2016 to November 5, 2016. Hearing Ex. 137. Additionally, the voicemail recordings introduced at the November 9, 2017 Show Cause hearing demonstrate that Defendants continued to conduct business selling wound care vacuums well after the Court's Injunction Orders. *See* ECF No. 338-1.

### 3. Defendants' Spoliation of Evidence

### i. Deletion of Data From Electronic Devices

36. In direct violation of the Court's July 28, 2016 Order, Defendants failed to timely deliver their work and personal electronic devices to the Court on Friday, July 29, 2016.

(1:14CV549)

ECF No. 191.  The Court sanctioned Defendants $5,000.00, jointly and severally, for failing to

timely comply with the Court's Order.  ECF No. 197.

37.  Based on third-party consultant Vestige Digital Investigation's ("Vestige") inventory,

data analysis, and deletion analysis with respect to Defendants' electronic devices, Defendants

installed several data removal programs on their ASUS computer and cellular phones that

overwrote and deleted files on these devices.[4]  *See* ECF Nos. 254, 269-2.  In accordance with this

finding, Vestige was able to conclude that a program called "Eraser" was installed on

Defendants' ASUS office computer that deleted information contained in the ASUS' hard drive

folder and "Recycle Bin."  ECF No. 269-2 at PageID#: 4843   45, ¶¶ 6   19.  Additionally,

Vestige received an iPhone 6 and a Samsung Galaxy S6 Edge Plus ("Samsung") on or about

December 14, 2016.  *Id.* at ¶ 20.  These devices were not deposited with the Court as ordered or

when ordered and instead were provided to KCI's counsel in December 2016, months later.  ECF

Nos. 262, 263, 269-3.  The Samsung has a telephone number of 216-644-6455 and belongs to

Ryan Tennebar.  *See* ECF No. 266-3 at PageID#: 4800.  Vestige also discovered deletion

programs on the Samsung device.  ECF No. 269-2 at PageID#: 4845, ¶ 20.

---

[4] Pursuant to the Court's November 4, 2016 Order, KCI was permitted to engage a third-party consultant to inventory and analyze Defendants' hardware deposited with the Court.  ECF No. 254.   KCI's Motion to Show Cause contains a declaration from Greg Kelley, the Chief Technology Officer of Vestige.  ECF No. 269-2. Mr. Kelley testified that Vestige performed an inventory, data analysis, and deletion analysis with respect to the electronic devices acquired from the Court on November 8, 2016 that were delivered by Defendants. *See, e.g.*, Hearing Ex. 160.  His testimony contains several findings, which remain unrebutted, and Defendants have not submitted any evidence to contradict his testimony.

14

Specifically, Vestige discovered four deletion programs installed on the Samsung: History Cleaner, iShredder 4 Professional ("iShredder"), Fill Device Memory, and MobileGo.  _Id_.[5]

### ii.  Witness Intimidation and Interference

38.  Defendants intimidated and intefered with KCI's gathering of witness testimony when Defendant Ryan Tennebar sent an email to a non-party fact witness, Mary Lou Diaz, warning her to stay out of his "business affairs."  Hearing Ex. 103.  In the email, Ryan Tennebar also stated that he still had the receipt from when he purchased Cleveland Cavaliers tickets for Ms. Diaz and her husband, and that if she is subpoenaed, "accepting the Cavs tickers is a clear violation."[6]  _Id._

39.  Defendants intimidated and intefered with KCI's gathering of witness testimony when Ryan Tennebar e-mailed Phillip Alhir, a witness subpoenaed by KCI, and stated "SAY YOUR [sic] OUT OF TOWN. DISCOVERY ENDS 10-22 and thecant [sic] pursue after that date."  Hearing Ex. 124.

---

[5]  History Cleaner is an application designed to delete browser history, messages, call logs, and call statuses on a mobile phone.  On July 29, 2016, "message cleaner" was searched for in the Google Play Store.  History Cleaner was subsequently installed on the Samsung on July 29, 2016 at 12:15 p.m.  ECF No. 269-2 at PageID#: 4846,¶ 21. iShredder is an application designed to wipe and erase free space on a device, delete file folders, and delete photos and contacts.  _Id._ at ¶ 22.  iShredder was first searched for in the Google Play Store on November 16, 2016 at 3:26 p.m.  _Id._  Fill Device Memory is designed to overwrite these deleted files with plain text files, making the data truly unrecoverable.  _Id._ at ¶ 23.  MobileGo is an application designed to delete cache files on devices and can erase photos and videos.  _Id._ at ¶ 24.

[6]  This email was forwarded to Colin Tennebar.  _See_ Hearing Ex. 103.

(1:14CV549)

### iii. Physical Destruction of KCI Products and Relevant Documents

40. On July 1, 2016, Defendants produced to KCI's counsel a large plastic bin of broken and destroyed KCI VACs. ECF Nos. 177 at PageID#: 3461; 177-6. Subsequent to Defendants' delivery of these broken KCI VACs and KCI's notice of same (ECF No. 177), on July 22, 2016, the Court ordered Defendants to deliver all KCI VACs in their actual or constructive possession to KCI's counsel on or before July 25, 2016. ECF No. 182 at PageID#: 3675. In an effort to make KCI VACs untraceable, Defendants delivered a large bin containing fifteen (15) KCI VACs without any Healthcare Essentials' identifying information. *See* ECF No. 185-1; 185-2. Additionally, Defendants altered the serial numbers embedded in KCI VACs. *See* Hearing Ex. 62.

41. On April 12, 2017, Ryan and Colin Tennebar removed boxes containing Healthcare Essentials' records, documents, and other items of evidentiary value to the litigation from a self-storage facility in Brecksville, Ohio. Hearing Ex. 159.

42. Any conclusion of law deemed to be a finding of fact is hereby included as a finding of fact.

## II. CONCLUSIONS OF LAW

### A. Preliminary Matter

1. As a preliminary matter, the Court addresses whether Defendants Ryan and Colin Tennebar are liable under the piercing the corporate veil theory. The Sixth Circuit has held that "when a corporation exists solely for the purpose of serving as an alter ego for its owners, the courts will not permit themselves to be blinded or deceived by mere forms or law."

16

(1:14CV549)

*Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 733  34 (6th Cir. Nov. 7, 2003) (internal

quotation marks omitted).  Rather, the courts "will deal with the substance of the transaction

involved as if the corporate agency did not exist and as the justice of the case may require." *Id.*

2.  Under Ohio law, courts will disregard the corporate entity and hold an individual

liable when the corporate form is abused.  *See Rutherlan Enter., Inc. v. Zettler Hardware*, 60 F.

Supp. 3d 828, 837 (S.D. Ohio Nov. 14, 2014) (explaining that a corporation's veil may be

pierced and individual shareholders held liable when: (1) the shareholders to be held liable

exercised control over the corporation such that it had no mind, will, or existence of its own; (2)

the shareholders used their control over the corporation to commit fraud, an illegal act, or a

similarly unlawful act; and (3) the plaintiff suffered injury or unjust loss as a result) (citing

*Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 511, 895 N.E.2d 538, 543 (2008) (quoting

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 288  89, 617

N.E.2d 1075, 1086 (1993)).

3.  By virtue of the conduct described above, Defendants Ryan and Colin Tennebar

created Healthcare Essentials, Inc. and Healthcare Essentials, LLC, with each as the sole

member/shareholder, respectively.  By virtue of the misconduct described above, at all relevant

times, there is overwhelming proof to support a finding that Defendants failed to follow

corporate formalities and used the companies for illegal purposes.  By reason of the foregoing,

Defendants shall be held jointly and severally liable under theory of piercing  the veil.

### B. Authority for Granting Default Judgment

4.  Default judgment and terminating sanctions for violating discovery orders and the spoliation of evidence is warranted in instances in which the disobedient party, who, having control over the evidence had an obligation to preserve it at the time it was destroyed, "knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction." *Beaven v. U.S. Dep't. of Justice*, 622 F.3d 540, 553    54 (6th Cir. 2010) (internal quotation marks omitted). Culpable conduct exists when a party intentionally chooses not to preserve relevant evidence and deliberately orders its destruction. *See Beaven*, 622 F.3d at 554. Bad faith is not relevant to whether a sanction should be imposed, but rather is more appropriately considered when deciding the type of sanction to impose following a finding of spoliation. *Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 533 (6th Cir. Oct. 18, 2012).

5.  The court may remedy the violation of discovery orders and spoliation of evidence with case-terminating sanctions under: (1) Fed. R. Civ. P. 37(b)(2), which permits the court to sanction a party for disobeying a discovery order; (2) the court's inherent authority to sanction abusive litigation practices; and (3) Fed. R. Civ. P. 37(e), which permits the Court to sanction a party for the spoliation of electronic evidence.  Each of these authorities have different requirements, although courts often follow the same analysis when considering terminating sanctions under Rule 37(b)(2) and the court's inherent power.

6.  Under Rule 37(b)(2), a court may sanction a party for failing to comply with discovery orders, including dismissing the action or entering default judgment against the disobedient party.

(1:14CV549)

*Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).  Similarly, the Sixth

Circuit has held that a federal court's inherent powers include broad discretion to impose

terminating sanctions such as "dismissing the case [or] granting summary judgment" when

crafting proper sanctions for spoliated evidence.  *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir.

2009).  Fed. R. Civ. P. 37(e) applies when "electronically stored information" that should have

been preserved "is lost" and "cannot be restored or replaced through additional discovery."  If the

court finds that the spoliating party "acted with the intent to deprive another party of the

information's use in the litigation," the court may "presume that the lost information was

unfavorable to the party" or dismiss the action altogether.  Fed. R. Civ. P. 37(e); *see Fharmacy

Records v. Nassar*, 379 F. App'x 522, 524   25 (6th Cir. June 7, 2010) (explaining that under the

Rule 37(e)(2), it is not an abuse of discretion for a court to dismiss an action when a party

deliberately deletes electronic data, thereby depriving the other party of primary evidence in the

case).

     7.  Furthermore, Fed. R. Civ. P. 16(f)(1)(C) permits a district court to "issue any just

orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails

to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  This includes granting

default judgment or dismissal if a party violates a district court's preliminary injunction order.

*See Stryker Corp. v. Prickett*, No. 1:14-CV-1000, 2017 WL 2262846, at *2 (W.D. Mich. May 24,

2017) (granting default judgment in plaintiff's favor for defendant's "continued" violations of a

preliminary injunction "even after the Court found Defendants in contempt for violating the

preliminary injunction[.]").

8. A case-terminating sanction for abusive discovery practices under these authorities requires a finding of "willfulness, bad faith, or fault." *See Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008). In other words, the party to be sanctioned has displayed "either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.*

9. Four factors are generally considered when determining whether default judgment is the appropriate sanction for a discovery violation under Rule 37: (1) whether the disobedient party acted with willful bad faith; (2) whether the opposing party suffered prejudice; (3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and (4) whether less drastic sanctions were imposed or considered. *See Fharmacy Records*, 379 F. App'x at 524 (explaining that the factors considered when reviewing a dismissal of an action or default judgment under Rule 37(b) or a court's inherent power are largely the same). *See also Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005); *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. Mar. 17, 2008) (citing *Bank One of Cleveland, N.A.*, 916 F.2d at 1073). "Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is delay or contumacious conduct," *i.e.*, conduct that is "'perverse in resisting authority' and 'stubbornly disobedient.'" *Schafer*, 529 F.3d at 737 (quoting Webster's Third New International Dictionary 497 (1986)).

10. Dismissal or entry of default judgment is the sanction of last resort but the Sixth Circuit has taken the position that, "if a party has the ability to comply with a discovery order and does not, dismissal [or entry of default judgment] is not an abuse of discretion."

(1:14CV549)

*Stamtec, Inc. v. Anson*, 195 F. App'x 473, 478 (6th Cir. 2006) (internal citation omitted) (alteration added).  Furthermore, the Sixth Circuit had held that when a party destroys evidence to conceal information, sanctions lesser than case termination will not suffice.  *See Grange Mut. Cas. Co.*, 270 F. App'x at 377.

11.  By virtue of the conduct the Court described herein, all of the factors articulated by the Sixth Circuit support granting default judgment in KCI's favor under the Court's inherent authority and Rule 37 against Defendants Healthcare Essentials, Inc., Healthcare Essentials, LLC, Healthcare Essentials Medical Devices, LLC, RT Acquisition, Inc., Ryan Tennebar, and Colin Tennebar.

### 1.  Willfulness, Bad Faith and Fault

12.  In considering this first factor, it is important to underscore that this is not a case in which merely a few documents were omitted from the production of discovery.  Rather, the record reveals that Defendants engaged in a protracted, repeated, and willful pattern of obstructing discovery and delaying the progress of this case.  First, with respect to the Court's discovery Orders, Defendants blatantly and willfully disregarded multiple Orders requiring production of: all KCI property; all customer information; a list of inventory; a list of locations of all KCI VACs; all electronic devices; as well as failed to generally cooperate in discovery.  *See* ECF No. 182 (Court Order requiring Defendants to produce evidence responsive to discovery requests including, "[a]ll KCI V.A.C.'s in possession of Defendants," and "a list identifying the KCI V.A.C.'s by serial number, location of the facility where the unit is in use, and the anticipated date that the unit will no longer be in use."); ECF No. 191 at PageID#: 3751 ("[D]ue

(1:14CV549)

to the Court's concerns with Defendants Healthcare Essentials, Inc., Healthcare Essentials, LLC, RT Acquisition, Inc., Colin Tennebar, and Ryan H. Tennebar's failure to comport with the letter and spirit of the Court's prior orders, . . . Defendants shall immediately relinquish all of their company and personal hard drives, mobile devices, and desktop computers to the Court."); ECF No. 197 at PageID#: 3894 ("Despite confirmation of receipt of the Court's Order and assurance of compliance, Defendants failed to produce 'all company hard drives and laptop computers' to the Court."); ECF No. 208 at PageID#: 3999 ("Despite the Court's written and oral articulations . . . Defendants have failed to comply with the Court's orders, including that requiring the production of a list of all "V.A.C.'s in use" identified by KCI's serial number and additional identifying information. ECF No. 182 at PageID#: 3675.").

13.  As indicated in the "Findings of Fact" section, KCI has identified myriad responsive documents and communications willfully withheld by Defendants in violation of the Court's Orders. *See, e.g.*, Hearing Exs. 1   8 (Defendants failed to produce communications establishing that Healthcare Essentials was in business and existed prior to 2012, despite Ryan Tennebar's testimony that Healthcare Essentials created in 2012); Hearing Exs. 8, 16, 31   32, 48, 56 (e-mail communications in which Defendants indicate that they are legally selling KCI VACs); Hearing Ex. 12 (an undisclosed email dated October 10, 2012, containing a list of KCI supplies for acquisition); Hearing Ex. 42 (an undisclosed email chain dated October 11, 2013 regarding a Healthcare Essentials' customer receiving an expired "bridge unit" (wound kits/bandages), in which Ryan Tennebar states "[d]oesn't matter. Their [sic] still good."); Hearing Ex. 157 (both Ryan and Colin Tennebar continued to store KCI VACs and KCI supplies at an undisclosed

storage location, well after the Injunction Orders and up to April 12, 2017; and, Defendant Colin

Tennebar stored KCI-related records at his residence well after the Injunction Orders and

attempted to show these records to law enforcement).

14. Instead of producing the requested discovery, Defendant Ryan Tennebar, on behalf of

Healthcare Essentials, executed and submitted false affidavits to the Court, in which he testified

that Healthcare Essentials: (1) fully complied with the Court's discovery Orders, (2) produced all

responsive information to KCI, and (3) was not in existence from 2007 through 2011. *See* Hrg.

Exs. 91 and 136. Moreover, in response to the Court's multiple Orders (June 30, 2016 Minutes

of Proceedings; ECF Nos. 168, 171, 182), Colin Tennebar executed a false affidavit attesting that

"Defendants' Supplement to Plaintiff's Memorialization of Discovery Status is true and

accurate," and that "Health Care Essentials, Inc. and Healthcare Essentials, LLC have fully and

truthfully answered all of KCI USA's discovery requests." *See* ECF No. 203.

15. In addition to the foregoing, Defendants also thwarted discovery by creating fake

invoices and inventory spreadsheets purporting to show the lawful purchase of KCI products.

*See* ECF Nos. 328-1 at PageID#: 5693; 333-4 at PageID#: 5954. And, despite numerous

Injunction Orders enjoining Defendants from engaging in the business of selling, servicing, or

otherwise disseminating any device or product to treat patient wounds in a treatment facility,

Defendants Healthcare Essentials and Ryan Tennebar continued to provide NPWT products to

healthcare facilities in violation of the Court's Orders. *See* Hearing Exs. 137, 144    149. *See*

*also* ECF No. 338-1 (voicemail recordings introduced at the November 9, 2017 Show Cause

hearing demonstrate that Defendants continued to conduct business selling wound care vacuums well after the Court's Injunction Orders).

16. In regards to spoliation of evidence, Defendants deliberately destroyed electronically stored information during this case and in direct violation of the Court's Orders. The testimony of KCI's third-party consultant, Vestige, remains unrebutted and the Court adopts that testimony in holding that Defendants' spoliated evidence with respect to the electronic devices identified. *See* ECF No. 269-2. *See also Beaven*, 622 F.3d at 554   55 (explaining that a court may rely on third party testimony regarding destroyed evidence when considering whether to issue sanctions for the spoliation of relevant evidence). Furthermore, Defendants delivered intentionally broken and destroyed VAC units and stripped labels off of others, knowing that the labels   that corresponded to the maintenance, cleaning, sterilization records   were critical to KCI's identification of the stolen VACs. *See* Hearing Ex. 62 (KCI introduced at least one communication from Ryan Tennebar that he sent during this litigation in which he states that he was "getting these embedded serial numbers erased" on KCI VACs in his possession); ECF No. 177-6 (evidence of VACs with indiscernible or altered serial numbers). Defendants also tried to block Plaintiff's attempt to take discovery from third-party witnesses. *See* Hearing Exs. 103 and 124. Lastly, both Colin and Ryan Tennebar traveled to a storage unit where they both encountered KCI property, and began throwing them in a nearby dumpster. *See* Hearing Exs. 154, 155, 158, and 159.

17. Accordingly, the substantial evidence supports a finding of willfulness, bad faith and fault on the part of Defendants. *See Pharmacy Records*, 379 F.  App'x at 527 (affirming

dismissal of action because the plaintiff and his counsel destroyed and misrepresented evidence, and made late disclosures of responsive documents).  The first factor, therefore, weighs heavily in favor of default judgment.

### 2.  Prejudice to KCI

18.  It is also evident that the prejudice to KCI is palpable.  For nearly three years its efforts to procure information crucial to its case have been as unsuccessful as they have been persistent.  Since KCI first served Defendants with comprehensive discovery requests KCI still has not received adequate answers to interrogatories and document production requests.  *See* ECF No. 167-8.  *See, e.g.*, *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (granting dismissal and finding the plaintiff's failure to provide adequate discovery responses prejudiced the defendant "by preventing it from obtaining evidence essential to the preparation of its defense"); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir.1997) (finding that it was not an abuse of discretion for the district court to grant defendant's Rule 37 motion to dismiss because plaintiffs had not complied with defendant's discovery requests or court orders for over nine months).  Defendants have deprived KCI of, at the least, evidence demonstrating to whom KCI VACs were leased and when, Defendants' financial data, Defendants' email correspondence, the number of KCI VACs acquired by Defendants, Defendants' telephone records, and serial numbers on VACs that were utilized and distributed by Defendants.

19.  As a result of the discovery misconduct, Plaintiff has been deprived of its right to discoverable evidence which it could have used to properly litigate this case before the Court.  In light of the foregoing, this factor also weighs heavily in favor of default judgment.

### 3.  Fair Warning

20.  With respect to the third factor, Defendants received more than adequate notice that default judgment was a potential sanction for their discovery misconduct.  The Court issued multiple orders    each Order clearly warning Defendants that additional sanctions and litigation disadvantages would be issued if they continued to violate court orders and refuse to cooperate in discovery.  *See* ECF Nos. 197, 208, 218, 226, 250.  The Court specifically threatened the "entry of default judgment" if Defendants continued to violate and resist the Court's Orders.  ECF No. 250.  The Court also fined Defendants $5,000.00, jointly and severally, and incarcerated Defendant Ryan Tennebar for contempt in an effort to force compliance with its Orders and cooperation in discovery.  ECF Nos. 197 and 208.  Therefore, this factor also weighs in favor of default judgment.

### 4.  Alternative Sanctions

21.  As to the last factor, the situation in the present case is so extreme that consideration of lesser sanctions does not militate against a default judgment.  While district courts may "impose many different kinds of sanctions for spoliated evidence," the appropriate sanction "should serve both fairness and punitive functions."  *Beaven*, 622 F.3d at 554.  As indicated above, Defendants have willfully fabricated, tampered with, and concealed evidence; repeatedly disobeyed the Court's orders; and, deliberately destroyed electronically stored information and

KCI VACs in their possession, all while litigation was pending. The Sixth Circuit has held that, "it is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction." *Grange Mut. Cas. Co.*, 270 F. App'x at 377 (affirming the district court's holding that default judgment was the appropriate sanction against the defendants who destroyed and withheld evidence and otherwise refused to cooperate in discovery). *See, e.g.*, *Bass v. Jostens, Inc.*, 71 F.3d at 237, 241 (6th Cir. 1995) (affirming the district court's dismissal of the plaintiff's complaint with prejudice because the plaintiff "failed to comply with four discovery orders of the court, failed to appear for a properly noticed deposition, and never sought any type of protective order from the court"); *Tech. Recycling Corp. v. City of Taylor*, 2006 WL 1792413, at *6 (6th Cir. June 28, 2006) (finding default judgment proper when party failed to comply with four court orders to produce discovery); *Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc.*, 2005 WL 1386475, at *5 (6th Cir. June 6, 2005) (finding default proper when party caused delay, failed to produce discovery after court orders and produced no financial information whatsoever).

22. The Court does not arrive at this conclusion lightly. The facts of this case and the level and extent of willful misconduct dictate default judgment against Defendants. Consequently, a default judgment shall be imposed against Defendants Healthcare Essentials, Inc., Healthcare Essentials, LLC, Healthcare Essentials Medical Devices, LLC, RT Acquisition, Inc., Ryan Tennebar, and Colin Tennebar on all counts in KCI's Third Amended Complaint.[7]

---

[7] In rendering a default judgment under Rule 37, all "well-pleaded allegations relating to liability are taken as true."

(continued...)

23.  To the extent any findings of fact are construed to be conclusions of law, they are hereby adopted as such.

### III.  ORDER ON MOTION TO SHOW CAUSE

In accordance with the Findings of Fact and Conclusions of Law stated herein, the Court orders that:

1.  Default judgment on all counts in Plaintiff's Third Amended Complaint be entered against Defendants Healthcare Essentials, Inc., Healthcare Essentials, LLC, Healthcare Essentials Medical Devices, LLC, RT Acquisition, Inc., Ryan Tennebar, and Colin Tennebar.  Defendant Healthcare Essentials, LLC's counterclaims (ECF Nos. 10 and 85) are hereby dismissed.

2.  Entry of a permanent injunction, as requested by KCI in its Third Amended Complaint, is warranted, in the form described in the Court's prior Injunction Orders, specifically ECF Nos. 162, 218, and 226.

3.  KCI is entitled to its reasonable attorney's fees and costs in prosecuting this action and defending against Defendants' former counterclaims.

The Court will conduct a hearing to determine the extent of Plaintiff's damages and its reasonable attorney's fees and costs.  The Court will allow the prevailing party to offer evidence of fees and expenses and allow the nonprevailing party to challenge the reasonableness of them.

---

[7](...continued)

*In re Family Resorts of Am., Inc.*, 972 F.2d 347 (Table), 1992 WL 174539, at *4 (6th Cir. July 24, 1992). The judgment amount is determined by the Court, which has the discretion to hold a hearing or refer the matter to accounting. *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

## IV. MOTIONS FOR DEFAULT JUDGMENT AS TO TEXAS DEFENDANTS

Plaintiff also seeks relief against Defendants Abel Cortez, Daniel Rader, and Anthony Estrada for violations of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02 (Count One); for conversion under Ohio common law (Count Two); for unfair competition under Ohio common law (Count Three); for civil theft under Ohio Revised Code § 2307.60 and § 2913.51 (Count Six); for replevin under Ohio law (Count Seven); for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Count Nine) and the Ohio Corrupt Activities Act ("OCA"), O.R.C. § 2923.31 *et seq.* (Count Ten); and for a permanent injunction (Count Five).[8] ECF No. 276.

Pending are Plaintiff's Motions for Default Judgment Against Defendants Daniel Rader and Anthony Estrada (ECF No. 355), and Defendant Abel Cortez (ECF No. 359), filed and served on February 28, 2018 and March 30, 2018, respectively. The Court has been advised, having read the file and reviewed the applicable law.

Defendants Anthony Estrada and Abel Cortez were duly served with summons and the Third Amended Complaint (ECF No. 276) by personal service, *see* ECF Nos. 284 and 287; but, have failed to plead or otherwise defend. Defendant Daniel Rader was duly served with summons and the Third Amended Complaint (ECF No. 276) by ordinary mail, *see* ECF No. 293; but, also has failed to plead or otherwise defend. On August 3, 2017, the Clerk entered the

---

[8] Pursuant to the Court's Order (ECF No. 274), Plaintiff filed its Third Amended Complaint on February 23, 2017, adding new party Defendants Abel Cortez, Daniel Rader, and Anthony Estrada. ECF No. 276.

(1:14CV549)

default of Defendants Anthony Estrada, Abel Cortez, and Daniel Rader pursuant to Fed. R. Civ.

P. 55(a). ECF No. 310.

For good cause shown, Plaintiff's Motions for Default Judgment Against Defendants

Daniel Rader and Anthony Estrada (ECF No. 355), and Defendant Abel Cortez (ECF No. 359)

on Count One, Count Two, Count Three, Count Five, Count Six, Count Seven, Count Nine, and

Count Ten of the Third Amended Complaint, are granted as to the issue of liability alone.

**V.**

A hearing shall be held to allow the Court to determine the amount of damages due

Plaintiff. This hearing shall address damages with respect to all Defendants.

The hearing shall be held on **July 13, 2018 at 10:00 a.m.** Fed. R. Civ. P. 55(b)(2).

Plaintiff's brief in support of its damages shall be filed not later than 14 days before the hearing.

Any responsive brief shall be filed not later than 7 days prior to the hearing. If necessary,

Plaintiff may reply not later than 3 days before the hearing.


IT IS SO ORDERED.


    June 29, 2018                        */s/ Benita Y. Pearson*         
Date                                   Benita Y. Pearson
                                      United States District Judge