PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KCI USA, INC., | ) | |
| | ) | CASE NO. 1:14CV549 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| HEALTHCARE ESSENTIALS, INC., *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 333] |

Pending is Plaintiff's Omnibus Motion for Sanctions Against Interested Party, Cavitch Familo & Durkin Co., LPA (the "Cavitch Firm"). ECF No. 333.

Pursuant to Federal Rules of Civil Procedure 26(g)(3) and 37(b)(2)(C), 28 U.S.C. § 1927, and the Court's inherent authority, Plaintiff moves for sanctions against the Cavitch Firm and certain of its attorneys[1] for discovery abuses that occurred during the representation of Defendants Healthcare Essentials, Inc; Healthcare Essentials, LLC; Healthcare Essentials Medical Devices, LLC; RT Acquisition, Inc.; Ryan Tennebar, and Colin Tennebar (collectively,

---

[1] Regarding the individual attorney's, Plaintiff's Reply states: "For the removal of any doubt, and as made clear in KCI's Omnibus Motion, the Court should sanction Michael Rasor, Komlavi Atsou, and Eric Weiss of the Cavitch firm  the same individuals who submitted affidavits with the Opposition (and, in fact attested to the statements made in the Opposition)  under 28 U.S.C. § 1927 for multiplying these proceedings unreasonably and vexatiously. (ECF Nos. 341-15, 341-16, 341-17)." ECF No. 346 at PageID#: 6508 n. 1.

(1:14CV549)

"Defendants").  The Cavitch Firm and counsel oppose the motion. ECF No. 341.  KCI has

replied.  ECF No. 346.

The Court has been advised, having reviewed the record, the parties' briefs and the

applicable law.[2]  For the reasons set forth below, Plaintiff's motion (ECF No. 333) is granted.

## I.  Background

Plaintiff KCI USA, Inc. ("KCI") initiated this action on March 12, 2014, alleging that

Defendants stole its wound-care vacuums ("VACs") and marketed them as their own.  *See* ECF

No. 1.  Since the inception of this suit, KCI's efforts to litigate the merits of this case have been

hindered by uncooperative behavior, dilatory tactics, and repeated discovery violations by

Defendants and, to some degree, the Cavitch Firm and certain of its counsel.  A brief chronology

of the events that led the Court to this finding is instructive.

On March 13, 2015, after having made several discovery requests, KCI moved for its first

order requesting that the Court sanction Defendants "for a pattern of blatant and continuous

discovery abuses."  ECF No. 42 at PageID#: 207.  Then, KCI had only Defendant Healthcare

Essentials, Inc. (and possibly its counsel) in its sights, and complained that "Healthcare

Essentials has refused, despite being compelled to do so by successive Orders of this Court and

almost a year into the discovery process, to produce purchase records and KCI serial numbers for

_____

[2]  The Court has also afforded the parties an opportunity to be heard.  The Cavitch
Firm was made aware of the November 9, 2017, Show Cause Hearing, *via* the Court's
Electronic Filing System.  No representative from the firm participated in the hearing.
The Cavitch Firm did, however, file a (written) Response to Accusations Contained in
Plaintiff's Bench Brief (ECF No. 329) shortly before the hearing began.  To discern
amounts to be paid, for the reasons described herein, the Court will hold an evidentiary
hearing as described later in this writing.

the VACs Defendant possess[ed]." *Id.* At that time, Plaintiff sought discovery pertaining to:

how Defendant acquired KCI VACs; how many VACs remained in Defendants' possession; and,

where the VACs were located. *See* ECF Nos. 42; 42-2 (KCI's February 16, 2015 letter to Court).

The Cavitch Firm asserted that Defendant Healthcare Essentials had produced complete and

accurate documents of invoices and inventory spreadsheets that identified all of KCI's VACs

within its control or possession, or presently being leased by Defendant to its customers. ECF

No. 49 at PageID#: 365   370. Based on the Cavitch Firm's representations certifying that

Defendant had complied with KCI's discovery requests and produced documents regarding their

KCI VAC inventory, KCI's motion for sanctions was denied.[3]  *See* ECF No. 56.

Unfortunately, KCI's counsel found it necessary to continue seeking intervention from

the Court about outstanding discovery issues.[4]  Consequently, on December 4, 2015, KCI moved

for: (1) an order requiring Defendant Healthcare Essentials, Inc. to show cause for why it should

---

[3]  Magistrate Judge Baughman articulated "serious concerns about the conduct of discovery by counsel and the parties on both sides."  ECF No. 56 at PageID # 671.  While he denied the motion, he also outlined expectations for what he hoped would be "the orderly and expeditious completion of discovery without further dispute and posturing." *Id.* at PageID#: 672.  As importantly, the opinion made clear the sanctions likely to befall the noncompliant   client and counsel.

[4]  *See* ECF Nos. 153 at PageID#: 2914 (Court Order stating that "[t]he Court is holding in abeyance ruling on KCI's request for costs and attorneys' fees pursuant to L.R. 7.1(i). ECF No. 150 at PageID#: 2850); 154 at PageID#: 2915 (KCI filed an emergency motion to compel compliance with the Court directed production of discovery); 177 at PageID#: 3459 (KCI moved for an order to show cause why Defendants should not be held in contempt and sanctioned for willful violations of the Court's July 1, 2016 Preliminary Injunction Order); 189 at PageID#: 3732 (KCI filed a motion for interim relief and second supplemental filing in support of its motion to show cause, requesting that the Court issue an Order requiring Defendants to immediately deliver all company hard drives and laptop computers to the Court); 243 at PageID#: 4515 (KCI filed a motion to show cause for violations of the preliminary injunction orders).

(1:14CV549)

not be held in contempt for continued violations of the Court's discovery Orders (ECF Nos. 40

and 56); and (2) an order sanctioning Defendant for willful violations of the Court's discovery

Orders and for its continued pattern of discovery abuses. ECF No. 79. In that motion, KCI

informed the Court that its third-party subpoenas to Defendant Healthcare Essentials' customers

revealed information that Defendant had failed to produce items, including "previously

undisclosed written contracts between Healthcare Essentials and various healthcare customers

(for VACs), along with HEI's e-mails containing representations about KCI and the VACs, and

even other communications which included misrepresentations by HEI and its counsel to current

and former KCI customers (about KCI, this litigation, and VACs). (*See*, *e.g.*, ECF 64-10)." *Id.* at

PageID#: 1168     69.

      KCI's motion was heard at a January 25, 2016 Status Conference before Magistrate Judge

Baughman.[5] *See* ECF Nos. 96 and 97. During the Status Conference, Magistrate Judge

Baughman discussed, in depth, the Cavitch Firm's failure to comply with Court's Order (ECF

No. 56) directing Defendants to:

> [I]dentify the [VACs] possessed by Healthcare Essentials and set up a chain of
> custody for each of those units from the time of distribution by KCI until those
> units came into the possession of Healthcare and then a chain of custody for each
> of the units from the time of the possession by Healthcare Essentials to the present
> and any documentation in possession of any party regarding the units in dispute.

ECF No. 111 at PageID#: 1850.

---

[5] The case was referred to Magistrate Judge Baughman for general pretrial
supervision by a (now) retired member of the court. *See* ECF No. 17.

When Magistrate Judge Baughman asked whether a chain of custody as to the VAC units in Defendants' possession had been developed, Cavitch Firm Attorney, Komlavi Atsou, answered in the affirmative. *Id.* at PageID#: 1851. After further questioning, he expounded that for each of the units "[w]e bought it, we produced it, we have receipts for them, and we distributed it to our customers that are using it, your Honor." *Id.* at PageID#: 1851 52. When asked whether the Cavitch Firm had been disclosing and updating their VAC list and initial disclosures, Atsou again answered in the affirmative, stating that "[w]e produced the units that we have, the complete list." *Id.* at PageID#: 1852 53. Lastly, regarding the serial numbers of the thirty-five VACs produced by Defendants, the Court asked Atsou: "[D]o you have anything you haven't produced yet?" Atsou responded, "No, your Honor. We have produced everything to them." *Id.* at PageID#: 1867 68. Despite Atsou's assurances that the above-mentioned discovery had been produced to KCI, Magistrate Judge Baughman, warned the Cavitch Firm of the significance of compliance:

> Well, here is the deal. They are signing under Rule 11 that they have given you everything that exists that they know of . . . and you are finding that there is other stuff that you may be able to find that you think they would have, but they don't. So they are going to have to answer for that. So it is put up or shut up."

*Id.* at PageID#: 1882.

Now, the Cavitch Firm contends that it was not until its March 30, 2016 review of documents on Defendants' Jurinov Hard Drive (herein "Defendants' hard drive") that "troubling" information with respect to Defendants' litigation-related conduct was revealed. *See* ECF No. 341 at PageID#: 6178 79. Subsequently, on April 8, 2016, Cavitch Firm Attorneys Eric J.

(1:14CV549)

Weiss, Michael R. Rasor, John Lisy IV, and Atsou, moved to withdraw as counsel for

Defendants, and filed an *ex parte* memorandum in support of their motion.[6]  ECF Nos. 135 and

136.  In granting the motion to withdraw, the Court put the Cavitch Firm on notice that, "should

the Court find cause for doing so, it may be called upon to clarify, explain, or justify its prior

actions as counsel in this case."  ECF No. 143 at PageID#: 2339   40.

As a result of the continued discovery-related disputes between the parties, KCI filed a

Motion to Show Cause and Request for Discovery Hearing arising out of Defendants' spoliation

of evidence.  ECF No. 269.  On November 9, 2017, the Court held a hearing on Plaintiff's

Motion to Show Cause.  *See* November 9, 2017 Minutes of Proceedings.  At the Show Cause

Hearing, KCI presented evidence of Defendants and the Cavitch Firm's discovery misconduct

including, violations of multiple Court Orders, misrepresentations made to the Court and KCI

regarding the prior document discovery productions, fabrication of documents produced in

discovery, and spoliation of evidence.  *See* ECF No. 331.

Following the Show Cause Hearing, KCI filed its Omnibus Motion for Sanctions against

the Cavitch Firm.  ECF No. 333.   KCI alleges that the Cavitch Firm repeatedly violated

discovery-related provisions of Rules 26 and 37 of the Federal Rules of Procedure, as well as

various Court Orders, by its:

> (1) misrepresentations made to the Court and KCI during in-person hearings
> regarding Defendants' prior document discovery productions;

---

[6] Unfortunately, the Cavitch Firm failed to take full advantage of the *ex parte*
opportunity to be candid with the Court.  The filing reveals no more than could have been
filed without such protection.

(2) direct assistance in the creation of fabricated and inaccurate "evidence" produced to KCI in response to Orders from the Court requiring production;

(3) actual knowledge of additional false and misleading documents produced in discovery prior to its withdrawal as counsel;

(4) withdrawing from counsel in this case without disclosing any of its improprieties and without correcting prior, false document productions and false statements to the Court and KCI.

*Id.* at PageID#: 5922    23.

As relief, Plaintiff urges the Court to impose sanctions    attorney's fees and costs    pursuant to Rules 26(g)(3) and 37(b)(2)(C), and the Court's inherent authority, 28 U.S.C. § 1927, against the Cavitch Firm and/or certain of its attorneys, as permitted and appropriate, for discovery misconduct during the litigation.  ECF No. 333.

The Cavitch Firm and counsel oppose, arguing that they did not knowingly withhold information; provide direct assistance in the creation of fabricated and inaccurate evidence, nor have reason to know or suspect that documents produced were other than authentic.  ECF No. 341.  Furthermore, they assert that under the Fifth Amendment privilege against self-incrimination and the attorney-client privilege, they had a duty to refrain from disclosing the past discovery misconduct of their former clients.  *See id.*

## II.  Law and Analysis

In deciding whether to impose sanctions on a law firm and individual attorneys, courts have several tools with which to work.  "Deeply rooted in the common law tradition is the power of any court to manage its own affairs [which] necessarily includes the [inherent] authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it."  *Carlucci*

(1:14CV549)

*v. Piper Aircraft Corp.*, 775 F.2d 1440, 1147 (11th Cir. 1985) (internal citation omitted).  In addition, a court has the authority to impose sanctions against counsel and law firms for discovery abuses under Rules 26(g) and 37 of the Federal Rules of Civil Procedure; and, 28 U.S.C. § 1927, permits sanctions to be imposed against individual attorneys.  Undoubtedly, when faced with discovery misconduct that unduly delays the progress of civil litigation, courts may impose sanctions when warranted.  *See e.g.*, *Med. Billing, Inc., v. Med. Mgmt. Sci., Inc. v. Reich*, 1996 WL 219657, at *3   *4, *7 (N.D. Ohio Apr. 26, 1996) (imposing sanctions, pursuant to Rules 26 and 37, against the defendant and defense counsel's law firm based on a history of discovery abuses that include: failing to timely produce discovery documents; failing to identify relevant witnesses, altering relevant documents already subject to production requests, and lying to the court and counsel about all of these things).

**A.  Sources for Sanctions**

　　1.  Rule 26

The Federal Rules of Civil Procedure set forth the discovery obligations of parties and their attorneys, and authorize federal courts to impose sanctions on those participants whom fail to meet these obligations.  "Federal Rule of Civil Procedure 26(g) requires an attorney or the party personally to certify that discovery responses and objections are supported by nonfrivolous argument and are not aimed to harass, cause delay, or drive up litigation costs.  The rule requires a court to impose sanctions for any violation occurring without 'substantial justification.'"  *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 854 (6th Cir. 2010) (citing Fed. R. Civ. P. 26(g)).  The signature of counsel or his client certifies that to the best of the "person's knowledge,

information and belief formed after a reasonable inquiry" the discovery response is complete,

correct, and interposed for a proper purpose. Fed. R. Civ. P. 26(g). The Advisory Committee

Notes for Rule 26 explain:

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests.

Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment). The attorney's signature

"certifies that the lawyer has made a reasonable effort to assure that the client has provided all

information and documents available to him that are responsive to the discovery demand." *Id.*

"If a certification violates this rule without substantial justification, the court, on motion or on its

own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was

acting, or both. The sanction may include an order to pay the reasonable expenses, including

attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added).

2. Rule 37

Another rule is relevant to the Court's consideration of sanctions. Rule 37(b)(2)(A) of

the Federal Rules of Civil Procedure governs the sanctions that may be imposed against the

party's failure to obey an order to provide or permit discovery. And, Rule 37(b)(2)(C) provides

that the court "*must* order the disobedient party, the attorney advising that party, or both to pay

reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

(1:14CV549)

substantially justified or other circumstances make an award of expenses unjust." (Emphasis added). The Sixth Circuit has held that a party meets the "substantially justified" standard if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington Fayette Urban Cty. Govt.*, 407 F.3d 755, 765 (6th Cir. 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

       3. 28 U.S.C. § 1927

Federal statute 28 U.S.C. § 1927 presents yet another avenue for sanctions against individual counsel. "In addition to the rule-based authority, federal courts have the inherent power to impose sanctions in order to prevent the abuse of the judicial process." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502 (N.D. Ohio 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Under 28 U.S.C. § 1927, "sanctions are warranted 'when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). *See also* *JPMorgan Chase Bank, N.A. v. Winget*, 602 F. App'x 246, 266 (6th Cir. 2015) ("[A] court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings even in the absence of any 'conscious impropriety.'") (quoting *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009)). "[Section] 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios*, 465 F.3d at 646.

(1:14CV549)

The purpose of imposing sanctions under § 1927 is to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Id.* "Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.* A court may exercise its inherent power to sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the conduct was "tantamount to bad faith." *Laukus*, 292 F.R.D. at 502 (citing *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers*, 501 U.S. at 45  46, 111 S.Ct. 2123; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). *See Red Carpet Studios*, 465 F.3d at 646 ("[F]ederal courts have the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith.").

### B. Sanctionable Conduct

#### 1. Rule 26

Regarding the imposition of sanctions under Rule 26(g)(3), the Court finds that the Cavitch Firm and individual attorneys are liable. In signing the responses to KCI's requests for production and its former client, Ryan Tennebar's false affidavit, they certified that, "to the best of their knowledge, information, and belief after a reasonable inquiry," Defendants' responses were consistent with the discovery rules and laws. *See* Fed. R. Civ. P. 26(g)(1). This has been proven false and patently so.

The Cavitch Firm repeatedly represented to the Court and KCI that it had produced all requested discovery to KCI. *See e.g.* ECF No. 49 (in Defendants' Memorandum of Opposition to

KCI's Motion for Sanctions, Cavitch Firm attorneys argued that sanctions are not warranted because Defendants had produced all discovery requested by KCI); ECF No. 111 at PageID#: 1851  52 (when asked at the January 25, 2016 hearing on Plaintiff's motion for sanctions, whether the Cavitch Firm developed a chain of custody as to the VAC units in Defendants' possession, Atsou responded, "We bought it, we produced it, we have receipts for them."); ECF No. 111 at PageID#: 1852  53 (when asked at the January 25, 2016 hearing on Plaintiff's motion for sanctions, whether the Cavitch Firm produced all information pertaining to the thirty-five VACs, Atsou responded, "We have produced everything to them."); ECF No. 54-1 (Cavitch Firm attorneys prepared and filed a false affidavit of its former client, Ryan Tennebar stating that Defendants had made full and complete production of their records).  Yet, KCI's discovery documents   obtained from a third-party source and which Cavitch attorneys had access   credibly contradict these representations.  Among the discovery documents retrieved (from this third-party source) by KCI, was an email, dated January 29, 2016,  between Cavitch Firm Attorney, Atsou, and Defendant Ryan Tennebar, in which Atsou requests that Ryan Tennebar "immediately" call him so that they "can (1) arrange the imaging of [his] computer . . . (2) compile the contracts and additional records for the 35 VACs with serial numbers we disclosed to KCI."[7] ECF No. 333-9 at PageID#: 5993 (alteration added).  This email was sent four days after the hearing on KCI's first motion to show cause and for sanctions against Defendant Healthcare Essentials, Inc. (ECF No. 79), in which Atsou assured Magistrate Judge

---

[7]  Individual Cavitch Firm attorneys, Michael R. Rasor, Eric J. Weiss, and John Lisy were copied on the January 29, 2016, February 2, 2016, and February 15, 2016 email communications between the Cavitch Firm and Defendants. *See* ECF Nos. 333-9; 333-10; and 333-11.

Baughman that the Cavitch Firm had *already* developed a chain of custody and "produced everything" to KCI regarding the thirty-five VACs. *See* ECF No. 111 at PageID#: 1851‒52; 1867‒88.

Similarly, on February 2, 2016, Cavitch Firm attorney, Rasor, sent Defendant Ryan Tennebar an email encouraging Defendants to comply (albeit belatedly) with their discovery obligations to avoid a "[court] order that effectively closes down your business." Rasor urged that Defendants produce: "[r]eceipts for all VACs purchased since March 2015," "serial numbers for all VACs purchased since March 2015," and, "[a]ll contracts with every single customer you have." ECF No. 333-10 at PageID#: 5997 (alterations added). In the string of emails exchanged on February 2, 2016, Rasor emphasized the need to scan Defendants' company hard drive with a promise that the results would be given to "CAVITCH . . . (not Benesch or KCI)" and that Cavitch would only "produce the documents that KCI is entitled to see." *See id.* at PageID#: 5995‒97.

Significantly, these instructions were given *after* the Cavitch attorneys' assertions to the Court and opposing counsel that all relevant and responsive documents had (already) been produced to KCI. If additional proof of noncompliance were needed, a February 8, 2016 email between Atsou and Defendants provides it. In this email Atsou writes: "[W]e still need the purchase records for the following three V.A.C.s, which are part of the original 35 or so V.A.C.s with serial numbers that we disclosed to KCI in March 2015." This further documents the Cavitch Firm's failure to produce discovery in accordance with Rule 26, ECF No. 333-11 at PageID#: 6000.

Before doing its due diligence, the Cavitch Firm and its individual attorneys, signed and, thereby, certified, that to the "best of their knowledge, information, and belief after a reasonable inquiry, Defendants' responses to KCI's requests for production of documents were complete and correct." It is now obvious that defense counsel had not made the necessary inquiries or investigations regarding Defendants' compliance before certifying their discovery responses; or submitting their clients' false affidavit (which stated that all responsive documents had been produced to the Court and KCI); or, telling the Court, verbally and in writing, on multiple occasions, that neither an injunction nor sanctions should be imposed on their clients because they had complied with Rule 26.

The Court finds it equally troubling that even after the Cavitch Firm and its individual attorneys had good reason to believe that their clients were not in compliance with the Rules of Civil Procedure and the Court's orders, they still did not act appropriately.

For the reasons above, the Court finds that the Cavitch Firm and its individual attorneys failed to meet even the minimal expectations of Rule 26.

2. Rule 37

When measured against the expectations of Rule 37, the Court finds that sanctions against the Cavitch Firm and individual counsel are appropriate for their failure to comply with the Court's discovery orders requiring that Defendants produce all relevant information in their possession relating to KCI VACs.[8] [9]  *See* ECF Nos. 39 (Court Order directing counsel for

---

[8]  The Rule 26 analysis is incorporated herein and below, when appropriate.

[9]  Other courts have imposed Rule 37(b)(2)(C) sanctions against a party and its

(continued...)

14

(1:14CV549)

Defendant Healthcare Essentials, Inc. to submit a letter explaining why the discovery at issue had

not been provided); 40 and 41 (Court Order noting that counsel for Defendant Healthcare

Essentials, Inc. did not provide a response to KCI's letter as ordered by the Court, and directing

Defendants to provide to KCI all of the discovery at issue, as described in KCI's counsel's letter);

56 (Court Order requiring that Healthcare Essentials, Inc. provide KCI with the identity of the

VACs it possesses, "chain of custody" of each these units, any documentation that goes to KCI's

claim that Healthcare Essentials, Inc. does not have a right to possess or distribute the units in

dispute). *See also* Fed. R. Civ. P. 37 (Rule 37 outlines the sanctions that a court may impose

upon parties and their counsel for failing to fulfill their discovery obligations under Rule 26, and

comply with Court imposed discovery obligations)*; Nat'l Hockey League v. Metro. Hockey Club,

Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (finding that the district

court properly considered the full record of the case in determining that Rule 37 sanctions were

---

[9](...continued)
counsel for failure to produce discovery and willfully violating a court order. *See*, *e.g.*,
*Encana Oil & Gas (USA), Inc. v. Zaremba Family Farms, Inc.*, 2014 WL 12638156, at
*1  *2 (W.D. Mich. Mar. 3, 2014) (justifying the imposition of Rule 37(b)(2)(C)
sanctions against the individual attorneys and law firm, for obstructive behavior and
willful violation of a court order); *McLaughlin v. Phelan Hallinan & Schmeig, LLP*, 756
F.3d 240, 249 (3d Cir. 2014) (affirming the district court's finding that, because the law
firm committed a clear violation of the court's discovery order in failing to produce
responsive documents to the plaintiff, sanctions in the form of attorney's fees and costs
under Rule 37(b)(2)(C) were warranted); *Baldus v. Members of Wis. Gov't Accountability
Bd., 843* F. Supp. 2d 955, 960 (E.D. Wis. 2012) (finding that the individual attorneys and
law firm were responsible for the "sandbagging, hide-the-ball trial tactics that continue[d]
to be employed," including their failure to comply with several court orders, and
therefore, the court imposed sanctions in the form of attorney's fees and costs under Rule
37(b)(2)(C)).

(1:14CV549)

warranted against the disobedient party and their counsel for failure to comply with discovery orders).

The Court also finds that sanctions are warranted under Rule 37 based on defense counsel's assistance in the creation of fabricated evidence. Specifically, Defendants produced to KCI and the Court invoices regarding its purchases of KCI VACs, inventory spreadsheets of KCI VACs within its possession, and product tracking sheets identifying KCI VACs sent to customers that were fabricated. *See* ECF Nos. 328-1 at PageID#: 5693   94  (at the November 9, 2017 Show Cause Hearing, KCI presented evidence, *via* former Healthcare Essentials' employee, Rose Edgar's deposition testimony that Defendants never kept a "tracking system or asset number" documenting the amount of KCI VACs in Defendants' inventory, proving the inventory spreadsheet   created by Defendant Ryan Tennebar and Cavitch Firm attorney, Komlavi Atsou   of all KCI VACs in Defendants' possession was fabricated); ECF No. 333-4 at PageID#: 5954   56 (Defendant Ryan Tennebar testified at his September 1, 2016 deposition that, "No VAC in my possession has ever been logged. I don't have a master list of every VAC that I own," and that the lists of KCI VACs and inventory spreadsheets Defendants and the Cavitch Firm jointly produced to KCI and submitted to the Court were "not legitimate" and "fabricated.").

The Court further finds that Rule 37 sanctions are appropriate based on the Cavitch Firm's and its individual attorneys' lack of candor with the Court in failing to correct its misrepresentations, and lack of forthrightness about Defendants' misconduct (even after it had been) discovered on Defendants' hard drive. *See* ECF 341 at PageID#: 6178   79  (in this

16

opposition, the Cavitch Firm states that, on March 30, 2016, it began its review of Defendants'

mirror-imaged hard drive CD containing "troubling emails" of Defendants' misconduct, and

therefore, moved to withdraw as counsel).  In arguing that sanctions are not warranted, the

Cavitch Firm attempts to justify its actions.  It asserts that it is absolved from any wrongdoing by

the attorney-client privilege and its alleged actions to protect its former client's, Ryan Tennebar,

Fifth Amendment privilege against self-incrimination.  *See id.*  The Cavitch Firm's arguments

fall far short of substantially justifying its behavior.[10]

The Cavitch Firm and individual attorneys, as former counsel and counsel of record to

Defendants in this case, had a professional responsibility to their clients and the Court.  *See* Ohio

Prof. Cond. Rule 3.3 (explaining that an attorney's duty to advocate for its client while

maintaining confidences of the client, however, is qualified by the advocate's duty of candor to

the tribunal).  *See also* Ohio Prof. Cond. Rule 1.6(d) ( "A lawyer shall reveal information relating

to the representation of a client, including information protected by the attorney-client privilege

under applicable law, to the extent the lawyer reasonably believes necessary to comply with Rule

3.3 or 4.1.").  The attorneys at the Cavitch Firm were well aware of their professional duty and

obligations to ensure that their clients complied with the Federal Rules and the Court's discovery

orders but failed to do so on numerous occasions.  On notice of Defendants' misconduct, counsel

was obligated to inform the Court of information relating to, not only its former clients'

discovery violations, but also, its own discovery violations, and the need for the earlier produced

---

[10]  At the evidentiary hearing, the Cavitch Firm and counsel will have an opportunity to better inform the Court of any effect it believes its client's status as a criminal defendant had on their actions.

discovery to be corrected or otherwise supplemented. *See* Rule 3.3(a) (a lawyer shall not

knowingly "make a false statement of fact or law to the *tribunal* or fail to correct a false

statement of material fact or law previously made to the *tribunal* by the lawyer."). Instead, the

Cavitch Firm and its attorneys Weiss, Rasor, Atsou, and Lisy IV, filed an *ex parte* motion that

lacked any material information of its former clients' misconduct and did nothing to assist the

Court in making a decision in the matter. ECF No. 136. *See* Rule 3.3(d) ("In an *ex parte*

proceeding, a lawyer shall inform the *tribunal* of all material facts *known* to the lawyer that will

enable the *tribunal* to make an informed decision, whether or not the facts are adverse."). And,

when given a second opportunity to better inform the Court, the Cavitch Firm, again, responded

in a manner unhelpful and inconsistent with its obligations under Rule 3.3. *See* ECF No. 233 at

PageID#: 4218    19 (During the August 5, 2016, Status Conference, the Court admonished the

Cavitch Firm for producing in discovery "that which [it] knew was false and/or fraudulent, and

[it] did not tell the Court[.]")  When given the opportunity to explain, the Cavitch Firm withheld

any material information that would have assisted the Court in resolving the matter. Had

Defendants' misconduct been revealed to the Court in August 2016    nearly two years ago    the

time, resources, and costs expended by the Court and parties in this case likely would have been

avoided or significantly reduced.

The Court finds that the Cavitch Firm and individual counsel were well aware that

Defendants' hard drive contained clear evidence of misconduct. The firm and counsel were also,

thereby, made aware of their own discovery misconduct.[11] The Cavitch counsel have not

---

[11] At the evidentiary hearing, Cavitch would be well advised to consider

(continued...)

satisfactorily explained why they did not reveal this misconduct to the Court or otherwise act to mitigate its effect. "An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir.1993). "This concept is as old as common law jurisprudence itself." *Id.* Neither the Cavitch Firm nor counsel can just stick their heads in the sand and cower behind their client's disobedience.

For the reasons stated above, the Court finds that the Cavitch Firm and individual counsel have failed to offer substantial justification for its misconduct, and the Court perceives no circumstances that would make an award of attorney's fees and costs unjust.[12]

---

[11](...continued)
presenting a timeline to inform the Court of what it knew and when that knowledge was obtained.

[12] *See Laukus*, 393 F.R.D. at 507 (ordering sanctions against counsel under Rule 26(g), Rule 37(b), and the court's inherent powers, in finding that the counsel's argument that, he should not be sanctioned because his client delayed providing him with the documents requested by the opposing party, was not substantially justified. In [*Laukus*], counsel made misrepresentations to the court and opposing counsel regarding discovery; failed to make reasonable efforts to determine that all discoverable information and documents had been identified and searched; failed to investigate whether the client's discovery responses were correct; counsel did very little to ensure that it was in possession of all relevant documents and other evidences before responding to discovery requests; and, ultimately, failed to meet their obligations as officers of the court). *See also Red Carpet Studios*, 465 F.3d at 647 (affirming the district court's award of sanctions, under its inherent authority, against counsel who willfully abused the judicial processes when he unnecessarily multiplied the litigation proceedings, made several misrepresentations to the court and opposing counsel, and refused to conduct reasonable discovery processes, that needlessly increased the costs of litigation).

(1:14CV549)

### 3. 28 U.S.C. § 1927

Lastly, KCI also seeks sanctions against individual Cavitch Firm attorneys: Michael R. Rasor, Komlavi Atsou, and Eric Weiss, pursuant to 28 U.S.C. § 1927. KCI argues that because these attorneys specifically orchestrated the above-mentioned falsehoods against the Court and KCI, they are each uniquely positioned to be singled out for sanctions under § 1927. The Court agrees.

Based on the record in this case, it is clear that the misconduct of these attorneys unreasonably multiplied the proceedings in this case, causing additional expenses to KCI and waste of the Court's limited resources. *See JPMorgan Chase Bank*, 602 F. App'x at 266. It must be presumed that officers of the court, attorneys at law, including the individual attorneys Rasor, Atsou, and Weiss, were aware of their obligation to present correct and complete information and evidence to the Court and KCI, pursuant to court orders and rules of discovery. Instead, these counsel obfuscated by making false assertions and presenting fabricated evidence. The Court finds that, but for their behavior, especially the false assertions on which great reliance was placed when considering KCI's earlier motions for preliminary injunctions and sanctions KCI's motions likely would have been well taken or unnecessary, allowing the case to proceed efficiently. Therefore, sanctions against Attorneys Rasor, Atsou, and Weiss, pursuant to § 1927 are justified for their behavior that unreasonably multiplied the proceedings.

(1:14CV549)

### III.  Conclusion

For the reasons stated above, Plaintiff's Omnibus Motions for Sanctions (ECF No. 333) is granted.  KCI is entitled to attorney fees and costs, in the form or sanctions, from the Cavitch Firm and individual attorneys Michael R. Rasor, Komlavi Atsou, and Eric Weiss.

The Court shall conduct a hearing to determine the sanctions on **August 3, 2018 at 10:00 a.m.**  Plaintiff's brief in support of its damages shall be filed not later than 14 days before the hearing.  Any responsive brief shall be filed not later than 7 days prior to the hearing.  If necessary, Plaintiff may reply not later than 3 days before the hearing.


IT IS SO ORDERED.


  July 16, 2018                _/s/ Benita Y. Pearson_
Date                                           Benita Y. Pearson
                                                    United States District Judge