UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KCI USA, INC., | ) | CASE NO. 1:14-CV-549 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF KCI USA, INC.'S** |
| HEALTHCARE ESSENTIALS, INC., ET | ) | **WRITTEN CLOSING ARGUMENT ON** |
| AL., | ) | **ATTORNEY'S FEES AND COSTS** |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

Pursuant to the Court's August 24, 2018 Minutes of Proceedings, Plaintiff KCI USA, Inc. ("KCI") submits its closing argument on the issue of attorney's fees following the August 24, 2018 attorney's fees hearing.  KCI reiterates its request that (1) KCI should recover all of its attorneys' fees ($2,349,346.50) and costs ($114,967.05) incurred in this action from Defendants, and that recovery should be joint and several; (2) KCI should recover $2,039,180.46 in attorney's fees and $113,175.96 in costs against Cavitch, Attorney Atsou, and Attorney Rasor, jointly and severally with all Defendants; and (3) KCI should recover $1,470,639.69 in attorney's fees and $83,997.99 in costs against Attorney Weiss, jointly and severally with Defendants, Cavitch, Attorney Atsou, and Attorney Rasor.[1]

KCI is not going to rehash in full the Court's Sanctions Order and sanctioned conduct here.  But KCI stresses that the Court's decision should be viewed against the following

---

[1] KCI presented a timeline at the August 24, 2018 hearing through its expert, Frank DeSantis.  To be clear, the timeline is not a summary of the specific instances for which KCI seeks attorney's fees, nor is it a complete recitation of all of the filings and activity in this case.  However, the timeline does identify many of the specific instances, with citations to the record, of Cavitch's and its attorneys' sanctioned conduct detailed in the Court's Sanctions Order (ECF No. 363), including the timing of such sanctioned conduct.  Most importantly, the timeline is supported with evidence, testimony, and argument that KCI's attorney's fees would not have been incurred but for Cavitch's and the Cavitch attorneys' sanctioned conduct.

backdrop, supported by KCI's expert via his testimony at the hearing:  Had Cavitch and the
sanctioned attorneys not engaged in the conduct detailed in the Sanctions Order (ECF No. 363),
a criminal enterprise could have been stopped, and KCI would not have incurred the legal fees
that it seeks now.  It is KCI, the patients it fought to protect, and to a degree this Court that are
the victims, not Cavitch, the Cavitch attorneys, or Defendants.

## II.    KCI'S REQUESTED ALLOCATION OF ATTORNEY'S FEES IS RELIABLE AND REASONABLE, WHILE CAVITCH AND THE SANCTIONED ATTORNEYS' IS NOT.

### A.    KCI's Requested Attorney's Fees Award is Supported By Reliable Expert Testimony.

KCI's requested attorneys' fees award and allocation is reliably supported by its expert,
Frank DeSantis.  (*E.g.*, ECF No. 421-1).  As demonstrated in his written conclusions and through
his testimony at the hearing, Mr. DeSantis has opined to a reasonable degree of certainty that all
fees incurred by KCl from April 1, 2015 to June 30, 2018, would not have been incurred but for
the sanctioned conduct of Cavitch, Rasor and Atsou.  (*Id*. at pp. 2-3).  He has further opined to a
reasonable degree of certainty that, with respect to Attorney Weiss, had the Cavitch firm and the
individual lawyers made their required disclosure to the Court upon withdrawal, most, if not all
of the fees from April 1, 2016 to June 30, 2018, would not have been incurred by KCI, totaling
$1,470,639.69.  (*Id*.).  Mr. DeSantis testified that he applied the Supreme Court's decision in
*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), and that based on his expertise
all of KCI's attorney's fees are reasonable.  (*Id*. at pp. 2-3).

Cavitch's attempts to discredit KCI's arguments and Mr. DeSantis's opinions fail.  While
Cavitch and the Cavitch attorneys devoted much of their cross-examination of Mr. DeSantis to
what KCI allegedly knew and when, and whether KCI's counsel informed Defendants' counsel

of their alleged "knowledge,"[2] Mr. DeSantis testified that this was irrelevant to his opinions. Rather, Mr. DeSantis relied on his expertise on legal ethics, attorney's fees, and Cavitch's and the Cavitch attorney's obligations outlined in the Court's Sanctions Order, as well as his knowledge of the *Goodyear* decision, and based on the documents, pleadings, filings, and orders he reviewed, opined that KCI would not have incurred specific categories of attorney's fees but for Cavitch's and the Cavitch attorneys' conduct outlined in the Sanctions Order.

Mr. DeSantis's opinions are fully supported by the record.  As it specifically pertains to attorney's fees finding, had the case ended at the bright line KCI advances, there would not have been full blown damage discovery.  There would have been no spoliation.  There would have been no creation or passing on of fake "evidence."  There would have been minimal third party discovery (certainly, KCI would not have had to scour the earth for Defendants' records, including chasing down fake locations where Defendants provided KCI's products) and no letters rogatory to Canada.  There would have been no research and motion practice related to compelling Defendants to surrender their devices to the Court.  There would have been no development of, chase for, and review of the Jurinnov hard drive.  There would have been no repeat sets of written discovery and no repeat discovery depositions.  There would have been no extensive research, preparation for, and presentation at show cause hearings.  Likely, there would have been no discovery hearings.  There would have been no disputed Cavitch withdrawal or hearings related to it.  There would have been no request for lawyer depositions, no painstaking

---

[2] Regardless, KCI did repeatedly alert Cavitch to KCI's theft suspicions, in addition to the pleadings and briefings it filed in this case.  Mr. DeSantis testified that Cavitch should have had a "heightened" awareness the moment it received the lawsuit, and certainly when KCI contacted Cavitch in writing about certain instances of proven theft. (*See* KCI's 11.9.2017 Show Cause Hearing Ex. 52).  Attorney Rasor's response, less than two months into this litigation, set the stage for Cavitch's representation of Defendants and its responses to KCI's theft allegations.  (*Id.*).

repeat records analysis, no motions for sanctions and likely no sanctions.  Instead, those actions dominated this litigation.  They were Cavitch's and the Cavitch attorneys' fault.[3]

Cavitch's remaining attempts to discredit Mr. DeSantis and KCI's requested fee award are equally deficient.  For example, Cavitch made much of a declaration submitted in a separate case that stated that "in October 2012," KCI became aware of Healthcare Essentials.  Submitting this declaration from a separate case was not necessary, and Defendants and Cavitch have long been aware of this allegation.  In its initial Complaint *in this case*, KCI expressly alleged that it became aware of Healthcare Essentials and its use of KCI's products "[i]n October 2012," but that it did not know where Healthcare Essentials was acquiring them.  (ECF No. 1, p. 3, ¶ 12).

Cavitch further suggested on Mr. DeSantis's cross-examination that KCI's first Motion for Preliminary Injunction did not seek to completely shut down Healthcare Essentials' business.  That is partially true.  At that time, based on the information that it possessed, KCI did not seek to enjoin Healthcare Essentials from engaging in <u>any</u> business.  But it did seek to enjoin Healthcare Essentials from engaging in any business using KCI's products.  Specifically, the Motion sought to enjoin Healthcare Essentials from "representing that it is affiliated with KCI in any way" including by <u>using KCI's products</u>.  (ECF No. 4-1).  The briefing makes clear that Healthcare Essentials' mere provision of KCI's products, as an unauthorized distributor, was resulting in customer confusion in the market and that KCI was seeking to enjoin that conduct.  KCI did not originally, based on the information it possessed, seek to enjoin all of Healthcare Essentials' business, but it did seek to enjoin its use of KCI's products.

Cavitch further suggested that because KCI discovered the name Abel Cortez in November 2015, this should have ended the case then.  Not only was this irrelevant to Mr.

---

[3] There would, however, have been attorney's fees expended for KCI to prove its damages.  KCI has excluded those fees from its requested fee award against Cavitch and the Cavitch attorneys.

DeSantis's opinions, the argument actually supports KCI's requested fee award.  If true, then had Cavitch merely collected e-mails from Ryan Tennebar's healthcare-essentials.com e-mail address at any time before March 2016, the case would have ended.  Regardless, KCI still had to prove its case, and in November 2015 up until KCI acquired the Jurinnov hard drive in October 2016, the entries demonstrate merely that all KCI had was a PayPal record showing money sent from Ryan Tennebar to someone named Abel Cortez.

KCI's expert's methodology is reasonable and reliable, and his opinions support KCI's requested fee award.  Had Cavitch and the Cavitch attorneys not engaged in the sanctioned conduct identified in January-March 2015, KCI would have succeeded on a preliminary injunction and its sanctions motion would have been granted.  Further, a criminal enterprise would have been revealed and, for this additional and independent reason, the case would have likely ended.

### B.    Cavitch's Expert's Methodology and Opinions Are Unreliable.

With respect to Cavitch's expert, her methodology and opinions are unreliable.  First, Ms. Blasik-Miller did not testify as to the reasonableness of KCI's incurred attorney's fees, including the rates charged and time spent, nor did she testify with respect to any financial ability to satisfy an award.[4]

Second, it was revealed on cross-examination that Cavitch's expert merely went through KCI's attorney's fee bills and allocated to Cavitch only those entries—except for one—that state "Cavitch" or "sanctions."  Essentially, Ms. Blasik-Miller circled only those time entries where KCI's attorneys were working on sanctions briefing.  While KCI is certainly entitled to reimbursement of those fees, this is not a but-for analysis and demonstrates that her methodology

---

[4] Notably, Ms. Blasik-Miller testified on cross-examination that she has never previously served an expert nor has she ever been involved with a sanctions proceeding in federal court in any capacity.

is inherently unreliable.  In fact, Ms. Blasik-Miller's analysis does not allocate any financial responsibility to Cavitch until September 2016, five months *after* Cavitch's withdrawal, although the Court concluded that the sanctionable conduct commenced at least one and half years earlier.

Third, her entire methodology is based on an admitted assumption that KCI would have expended the same legal fees without the sanctioned conduct because Defendants were "bad actors," yet she shifts against Cavitch certain attorney's fees that KCI expended on later sanctions motions in 2016 and 2017 filed against <u>Defendants</u> after Cavitch withdrew—an inherent contradiction of her own assumption.  Stated differently, if her methodology is built on the assumption that Defendants were "bad" actors and would have engaged in "bad" conduct no matter who was representing them, then she should not have shifted those fees against Cavitch. In performing the wrong analysis and not performing another, she nullified her testimony.

Fourth, Ms. Blasik-Miller's opinion that KCI would still have expended effectively all of its attorney's fees even without the sanctioned conduct is flawed.  On cross-examination, Ms. Blasik-Miller identified her assumption for this opinion:  That it was Defendants, not Cavitch, who refused to turn over documents and responsive information, and so even without Cavitch's sanctioned conduct identified in early 2015, Defendants would have continued to conceal all of their documents and information anyway (*i.e.*, through new counsel if Cavitch had withdrawn then).  Her assumption ignores not only Cavitch's and the Cavitch attorneys' obligations under the Federal rules, ethical rules, and the Court's Orders, but also a critical fact:  Cavitch was able to, and did in fact, acquire the documents and information that basically every party and lawyer agrees would have ended this case, via the Jurinnov hard drive in March 2016—although did not inform KCI or the Court about the contents then.  Those documents consisted merely of Ryan

Tennebar's own e-mails and documents on Healthcare Essentials' own office computer.[5]  It was acquired after repeated pressure from KCI and after its second Motion for Sanctions filed in December 2015.  Prior to, during, and after March 2015 (the earlier of Cavitch's sanctioned conduct), instead of abiding by their "obligation to present correct and complete information and evidence to the Court and KCI, pursuant to court orders and rules of discovery . . . these counsel obfuscated by making false assertions and presenting fabricated evidence," and by "telling the Court, verbally and in writing, on multiple occasions, that neither an injunction nor sanctions should be imposed on their clients because they had complied with Rule 26."  (ECF No. 363, pp. 14, 20).

Fifth, Ms. Blasik-Miller's methodology and opinions are unreliable for the additional, independent reason that they contravene the Sanctions Order.  Specifically, she opined that Defendants' story was reasonable, and that Cavitch was permitted to believe them and blindly parrot their position.  This Court already expressly rejected that contention in the Sanctions Order.  (*See* ECF No. 363, p. 19 ("Neither the Cavitch Firm nor counsel can just stick their heads in the sand and cower behind their client's disobedience.")).  She ignores the fact that Cavitch had the option of either withdrawing with proper disclosures to the Court in 2014 and 2015, or informing the Court and KCI that their client was not complying with KCI's discovery requests. In the latter instance, multiple avenues would have existed for KCI to succeed in early 2015, including by (1) obtaining its preliminary injunction by arguing against an unarmed party at the hearing; or (2) succeeding on its Motion for Sanctions.  Or, alternatively, Cavitch and the sanctioned attorneys could have complied with their obligations detailed in the Court's Sanctions

---

[5] This is an important point:  The "Jurinnov hard drive" was not some independent set of data collected by a third-party with no connection to this dispute.  The data consisted merely of Ryan Tennebar's e-mails from his healthcare-essentials.com e-mail address, and Healthcare Essentials' office computer, and Jurinnov was Cavitch's consultant, acting at Cavitch's direction.

Order by acquiring a rudimentary set of data (Ryan Tennebar's e-mails, and documents from Healthcare Essentials' own computer) that it actually did silently acquire directly before its withdrawal in 2016.

Ultimately, what Ms. Blasik-Miller did do is reverse engineer a low, emotion-driven number that is just slightly above the amount of KCI's fees merely in the month following Cavitch's submission of a knowingly fake affidavit, evidence, and sanctioned arguments to the Court to avoid being sanctioned in 2015 and losing at a preliminary injunction hearing. Her additional assumption that litigants take multiple depositions of the same witnesses—including parties—and serve dozens of third-party subpoenas even after receiving comprehensive discovery responses from the actual parties is not reliable, nor are the remainder of her opinions.

Finally, Cavitch's expert cherry picked no more than a handful of time entries related to certain tasks performed regarding a related lawsuit in federal court in Tampa, Florida.[6] Those entries were billed by Benesch timekeeper "TGC." KCI believes that those time entries are appropriately allocated to Cavitch and the Cavitch attorneys under the but-for test. However, KCI is willing to forego those fees specifically relating to the Tampa litigation. The total approximate amount of those fees billed by timekeeper "TGC" are $9,778.50.[7]

## III.  EVEN IF THE COURT CONSIDERS IT, CAVITCH AND THE CAVITCH ATTORNEYS HAVE FAILED TO MEET THEIR BURDEN TO DEMONSTRATE AN INABILITY TO PAY.

---

[6] As was made clear by KCI's expert on his cross-examination, KCI was billed under a separate matter number for the litigation in the Middle District of Florida. The fees incurred for that separate matter—north of $235,000—are not included in the fees sought here.

[7] Upon the conclusion of the August 23, 2018 Sanctions Hearing, Cavitch handed a "timeline" of events to KCI's counsel and the Court. The timeline is unsworn and appears to have been created by Cavitch. KCI did not have an opportunity to review the timeline prior to or during the sanctions hearing, nor did KCI have an opportunity to cross examine Cavitch or the Cavitch attorneys with respect to it. For these reasons, the Court should not consider the timeline in allocating sanctions.

With respect to ability to pay, Cavitch has argued that the financial sanction to it and its lawyers should be small, compared to KCI's actual fees incurred due to the sanctioned acts, so a judgment does not overwhelm them.  As an initial matter, the Sixth Circuit's decision in *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624 (6th Cir. 2009) reflects that ability to pay *may* be a consideration for sanctions under 28 U.S.C. § 1927, which in the Sixth Circuit applies to attorneys, not law firms.[8]  While this Court sanctioned the attorneys under § 1927, the Court also imposed sanctions under Rule 26(g)(3), Rule 37(b)(2)(C), and the Court's inherent authority, and the Court is not required to consider ability to pay in these contexts, both with respect to the attorneys and Cavitch, the law firm.  *See Hill v. Lazarou Enterprises, Inc.*, 2011 WL 1085336, at *3 (S.D. Fla. Mar. 21, 2011) (distinguishing *Garner* on the basis that it involved attorney's fees under § 1988, not Rule 37); *Williamson v. Recovery Ltd. P'ship*, 2014 WL 1884401, at *14 (S.D. Ohio May 9, 2014) (holding that "a specific inquiry into [the attorney's] ability to pay is not required, when sanctions are imposed under the Court's inherent power."), *aff'd*, 826 F.3d 297 (6th Cir. 2016), citing *Telechron, Inc. v. Intergraph Corp.*, 91 F.3d 144, at *2 (6th Cir. July 2, 1996); *Sun v. CM Prod., Inc.*, No. 5:07-CV-227-JMH, 2009 WL 482523, at *2 (E.D. Ky. Feb. 25, 2009) ("[T]his Court has found no precedent which requires it to consider Plaintiff's ability to pay when it exercises its inherent powers to sanction him and, in this instance, the Court declines to do so.").

Further, KCI has not located any legal authority holding that ability to pay is an appropriate factor to reduce an attorney's fees award, arising out of the Court's cited sanctions here, against a law firm.  While authority does exist that ability to pay may be a factor for individual attorneys under § 1927 (*see Garner*, *supra*), and that ability to pay must be considered

---

[8] However, with respect to Defendants, *Garner* is inapposite to any consideration of ability to pay.  KCI contends that a fee award is mandatory with respect to Defendants pursuant to its causes of action for RICO and under the Ohio Corrupt Activities Act.

9

in the context of Rule 11 sanctions (not applicable here, *see In re Reese*, 485 F. App'x 32, 38 (6th Cir. 2012) (noting the requirement in the Rule 11 context but refusing to extend it to other authorities for sanctions)), none that KCI can locate reduce an attorney's fee award for the sanctions authorities delineated here against a law firm.

Nonetheless, the sanctioned parties' "ability to pay" submissions are deficient as a matter of law. KCI notes that Cavitch has not even filed any ability to pay documentation with the Court. And the Cavitch attorneys' submissions are not supported by any documentary evidence of their stated, and partial, financial position. The Sixth Circuit routinely rejects an ability to pay affirmative defense under these circumstances. *See Sagraves v. Lab One, Inc*., 316 F. App'x 366, 372 (6th Cir. 2008) (affirming attorney's fees award for sanctions where party "failed to properly document his financial status"); *Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 440 (6th Cir. 2007) (noting that "when courts evaluate an attorney's ability to pay, the burden of proof is on the sanctioned party to provide evidence of financial status" and affirming district court's sanctions award where the sanctioned attorney only provided an affidavit with "no supporting documentation, nor, as the court observed, any evidence of income or net worth. With only this conclusion of his financial status, counsel failed to meet the sanctioned party's burden of proof.").

Further militating against an "ability to pay" reduction is that Cavitch's and the Cavitch attorneys' submissions are not wholly credible.[9] ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Moreover, it is illogical that Cavitch and the Cavitch attorneys can contend that KCI's attorney's fees are excessive, ███

---

[9] As an aside, Cavitch's contention that KCI and Benesch "are touting their perceived accomplishment" is completely uncalled for, wholly unsupported, and reflects its continued pattern of making factual representations with no record support.

██████████████████████████████████████  KCI has not had an opportunity to examine the Cavitch firm or the Cavitch Attorneys with respect to any of the financial submissions, which were only provided to KCI at the conclusion of the August 24, 2018 hearing. As no supporting financial documentation has been filed with the Court, the Sanctioned Parties should not be entitled to a financial needs reduction absent KCI's opportunity to conduct limited discovery and cross-examination with respect to those submissions.  Although KCI does not believe any financial needs based reduction is appropriate for the reasons above, should the Court be inclined to consider those arguments advanced by the Sanctioned Parties, KCI respectfully requests that it be entitled to limited discovery and cross-examination with respect to the averments on the Sanctioned Parties' financial submissions.[10]

Additionally, any consideration of ability to pay should be viewed against the compensatory nature of an award to KCI and the facts of this case.  Cavitch's theory would only be relevant in an effort to fix a punitive sanction so the sentence would fit the crime.  Were the Court to decrease KCI's attorney's fee recovery solely to account for the sanctioned parties' purported inability to pay, it would stand astride the slippery slope of holding lawyers who are more financially successful to a different standard than those who are less economically sound.

Ultimately, the Court is faced with at least two competing considerations:  Compensating KCI for attorney's fees that would not have been expended but-for the sanctioned conduct, and Cavitch's and its attorneys' ability to pay.  KCI maintains that the former should outweigh the latter, and even more so should the Court determine to consider the Cavitch firm's "ability to

---

[10] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

pay."  Moreover, because the sanctioned parties have failed to satisfy their inability to pay burden, this, too, militates against a reduction of KCI's requested fee award.

## III.    CONCLUSION

The Court has previously found that Cavitch and the Cavitch attorneys engaged in pervasive sanctionable conduct to the benefit of their clients and to the detriment of KCI.  Yet, not once have these parties expressed any remorse for their misconduct or an apology to the Court, KCI, or opposing counsel.  However, that does not prevent them from seeking the Court's sympathy when it is apparent that they are now required to accept the consequences of their actions.  Cavitch and the Cavitch attorneys, while denying the sanctioned acts, instead have blamed KCI, KCI's attorneys, and ask the Court for mercy where none has been earned.  Simply put, KCI and the patients it fought to protect (some which include the country's most at-risk people—nursing home patients) are the actual victims.  The victims are not Defendants, Cavitch, or the sanctioned attorneys, who broke the rules, harmed KCI by multiplying the costs of the litigation, and prolonged their clients' criminal enterprise through vigorous and sanctioned litigation tactics that also ballooned KCI's harm on the underlying claims.

Accordingly, for the foregoing reasons, and for those expressed in KCI's pre-hearing briefing and during the August 24, 2018 hearing, KCI respectfully requests that the Court enter an Order awarding KCI the following:

(1)    An award of all of KCI's attorney's fees totaling $2,349,346.50 and costs totaling $114,967.05 against all Defendants, jointly and severally;

(2)    An award of attorney's fees in the amount of $2,039,180.46 and costs in the amount of $113,175.96 against Cavitch, Attorney Atsou, and Attorney Rasor, jointly and severally with all Defendants; and

(3)     An award of attorney's fees in the amount of $1,470,639.69 and costs in the amount of $83,997.99 against Attorney Weiss, jointly and severally with all Defendants, Cavitch, Attorney Atsou, and Attorney Rasor.


Respectfully submitted,

*/s/ Thomas O. Crist*
Thomas O. Crist (0064454)
David A. Landman (0082887)
Anthony C. Sallah (0092603)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio  44114-2378
Telephone:   (216) 363-4500
Facsimile:   (216) 363-4588
Email:          tcrist@beneschlaw.com
                    dlandman@beneschlaw.com
                    asallah@beneschlaw.com

*Counsel for Plaintiff KCI USA, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on August 28, 2018 a copy of the foregoing was sent by the Court's electronic filing system to attorneys of record. A copy of the foregoing was also sent via U.S. Mail, postage prepaid, to:

Anthony Estrada
1733 Robert Wynn Street
El Paso, Texas 79936

Daniel Rader
5724 Kensington Circle
El Paso, Texas 79924

Abel Cortez
3516 Tierra Bahia Drive
El Paso, Texas 79938

_/s/ Thomas O. Crist_____
Thomas O. Crist

11460260 v2