PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KCI USA, INC. ) | |
| ) | CASE NO. 1:14cv549 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| HEALTHCARE ESSENTIALS, INC., *et al.* ) | |
| ) | |
| Defendants. ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** [Regarding ECF Nos. 367, 381] |

On August 3, 2018 the Court held an Evidentiary Hearing on Damages. *See* August 3, 2018, *Minutes of Proceedings*. Following the Hearing, the parties filed briefs in support of their positions. ECF Nos. 387; 389. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons that follow, the Court awards Plaintiff $645,016,638.00 in monetary relief, jointly and severally against all Defendants.

### I. Background

Plaintiff KCI USA, Inc. manufactures, sells, and maintains medical devices. ECF No. 276 at PageID#: 4934, ¶ 15. Among those devices are "V.A.C.® System Units," or "VACs" wound therapy units designed to promote healing by applying negative pressure (a vacuum) to the wound site. *Id.* KCI's customers are healthcare facilities including hospitals and nursing homes. *Id.* at ¶¶ 16-17.

Defendants Ryan and Colin Tennebar are brothers. *See* ECF No. 360 at PageID#: 6646. Together they created the business entities Healthcare Essentials, Inc., Healthcare Essentials,

(1:14cv549)

LLC, Healthcare Essentials Medical Devices, LLC, and RT Acquisition, Inc. *Id.* at PageID#: 6654. Ryan Tennebar was the sole member of both limited liability companies, and Colin was the sole shareholder of Healthcare Essentials, Inc. *Id.* The LLCs and corporations together are referred to as "Healthcare Essentials" or the "Entity Defendants." The Entity Defendants and the Tennebar brothers together are referred to as the "Ohio Defendants."

Defendants Abel Cortez, Daniel Rader, and Anthony Estrada are former employees at KCI. ECF No. 276 at PageID#: 4933, ¶¶ 9-11. All three live in Texas, *id.*, and they are referred to collectively as the "Texas Defendants." All of the Texas defendants have failed to plead or otherwise defend.

On February 23, 2017, Plaintiff filed its Third Amended Complaint. *See id.* The Complaint alleged Defendants stole KCI VAC System units and built an entire enterprise from that theft. *See id.* Accordingly, the Third Amended Complaint asserted causes of action for violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02; for conversion under Ohio common law; for unfair competition under Ohio common law; for tortious interference with a prospective business relationship under Ohio common law (as to the Ohio Defendants only); for civil theft under Ohio Rev. Code § 2307.60 and § 2913.51; for replevin under Ohio law; for unfair competition under § 43(a) of the Lanham Act (as to the Ohio Defendants only), 15 U.S.C. § 1125(a); for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and the Ohio Corrupt Activities Act ("OCA"), Ohio Rev. Code §§ 2923.31 et seq.; and for a permanent injunction. ECF No. 276 at PageID#: 4941-51.

2

(1:14cv549)

Defendants engaged in flagrant discovery abuses. *See* ECF No. 360 at 6641-53. They filed false affidavits, refused to produce relevant communications and documents, fabricated invoices and inventory spreadsheets, destroyed digital and physical evidence, and intimidated at least two witnesses. *Id.* They also refused to comply with the Court's injunctive orders. *See id. at PageID#: 6648-50*.

On June 29, 2018, the Court entered default judgment against all Defendants on all counts. *See id.* at PageID#: 6665-67. Prior to the on August 3, 2018 hearing to assess damages, KCI, Ryan Tennebar, and the Entity Defendants (the "Stipulating Parties") entered a proposed stipulation order as to damages. *See* ECF No. 381. Under the stipulation, Ryan Tennebar and the Entity Defendants agree to pay "compensatory damages" in the amount of $215,005,546.00, and KCI agrees not to pursue punitive damages. *Id.* at PageID#: 7304. The Stipulating Parties do not agree, however, on what portion of that stipulated compensatory amount should be trebled. *Id.*

Colin Tennebar did not join the stipulation. He argues that, although the factual allegations in KCI's Third Amended Complaint are established as a matter of law, the Court should nevertheless decline to impose damages against him because the allegations fail to state a plausible claim against him. *See* ECF No. 373.

The Texas Defendants did not appear at the damages hearing, and they did not submit briefing.

The Court held a separate hearing on August 24, 2018, to determine attorney fees and costs.

(1:14cv549)

## II. Law and Analysis

### A. Colin Tennebar is Liable for Damages

Since the Court entered a default judgment against Colin Tennebar, ECF No. 360 at PageID#: 6664, the factual allegations against him are no longer open to dispute. *United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007). Nevertheless, he remains entitled to question whether those allegations amount to law violations. *See id.* at 1038-39; *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010) ("A default judgment does not preclude review of whether the allegations in the complaint, if taken as true, were sufficient to state a claim and support a judgment of liability.").

To survive such a challenge, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.

Colin Tennebar argues that KCI's Third Amended Complaint fails to make any plausible allegations against him. ECF No. 373. He posits that the complaint's allegations include his name in passing but are unaccompanied by any factual support, and, as it relates to him, the Complaint is therefore implausible on its face. *Id.* at PageID#: 7270-71.

Colin Tennebar's argument fails for two reasons. First, the Court has already pierced the corporate veil with respect to Healthcare Essentials, Inc., exposing Colin Tennebar to individual

4

(1:14cv549)

liability for the entity's torts. ECF No. 360 at PageID#: 6653-54. Colin Tennebar is the sole shareholder of Healthcare Essentials, Inc. ECF No. 276 at PageID#: 4933, ¶ 8; ECF No. 283 at PageID#: 5188, ¶ 8. Under Ohio law, courts will disregard the corporate entity and hold an individual liable when the corporate form is abused. *See Rutherlan Enter., Inc. v. Zettler Hardware*, 60 F. Supp. 3d 828, 837 (S.D. Ohio Nov. 14, 2014). In this case, the Court found "overwhelming proof" that Ryan and Colin Tennebar had exercised total control over the entities, they used their control over the entities to commit fraud and other illegal acts, and KCI suffered unjust loss as a result. *See* ECF No. 360 at PageID#: 6654. Because the Court has pierced the corporate veil, any plausible claim against Healthcare Essentials, Inc., also impugns Colin. The allegations against the entities in the Third Amended Complaint are factually rich. *See* ECF No. 276 at PageID#: 4934-41.

Second, even if the corporate veil remained intact, the allegations in the Third Amended Complaint would suffice to state a claim against Colin Tennebar individually. The Third Amended Complaint lists Colin Tennebar as a "Defendant." *Id.* at PageID#: 4931-32. Even though most of the factual allegations in the Third Amended Complaint do not spell out the name "Colin Tennebar," they nevertheless designate him specifically, in various instances by reference to "Defendants," "the other Defendants," "Defendants in Ohio," "Defendants Tennebar," and "All Defendants." For example:

> 23. . . . [Healthcare Essentials and Ryan Tennebar] *and the other Defendants* have acquired KCI goods, including V.A.C. Systems, as the result of their participation in the conduct of an association-in-fact enterprise through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding KCI. *Id.* at PageID#: 4936, ¶ 23 (emphasis added). . . .

5

(1:14cv549)

>27. . . . Cortez, Rader, and Estrada began sending stolen V.A.C. Systems to *Defendants in Ohio*, on or about January 11, 2013. . . . Additional shipments were sent in 2013 on or about January 17, January 24, February 18, February 19, February 20, February 26, March 30, April 4, May 16, May 21, May 29, June 13, June 27, July 17, July 18, August 9, August 10, August 27, September 9, September 13, September 18, September 24, October 22, October 28, October 30, November 4, November 8, November 9, November 11, November 15, December 6, December 19, December 30, 2013. Additional shipments were sent in 2014 on or about January 3, January 10, January 21, January 25, January 28, February 4, February 14, February 17, February 21, March 5, March 6, March 20, March 26, April 15, May 2, May 6, May 28, May 30, June 3, June 9, June 12, June 26, July 7, July 21, July 24, August 28, September 4, September 8, September 13, September 25, September 30, October 22, October 29, and December 9, 2014. *Id.* at PageID#: 4937, ¶ 27 (emphasis added). . . .
>
>30. . . . KCI does not yet know the face amount of checks *Defendants Tennebar* sent to Cortez, Rader, and Estrada via UPS delivery. *Id.* at PageID#: 4938, ¶ 30 (emphasis added).
>
>31. Every single transaction entered into between or among *Defendants* involving Cortez, Rader, and Estrada involved the theft of KCI's property. *All Defendants*, at all times, possessed actual knowledge that the KCI products identified above were stolen from KCI and/or were procured by fraud. *Id.* at PageID#: 4938, ¶ 31 (emphasis added).

The factual allegations in the Third Amended Complaint are established as a matter of law as a result of the Court's default judgment. ECF No. 360 at PageID#: 6665; *see Conces*, 507 F.3d at 1038 (6th Cir. 2007). Because the allegations in Plaintiff's Third Amended Complaint are sufficient to state claims against Colin Tennebar individually, he shall be held liable jointly and severally with all other Defendants.

**B. Base Damages Assessment: $215,005,546.00 as to All Defendants**

As an initial matter, the Court adopts the proposed stipulation order setting gross compensatory damages at $215,005,546.00 as to the Stipulating Defendants (that is, Ryan Tennebar and the Entity Defendants). As discussed below, that figure is a fair and reasonable

6

(1:14cv549)

calculation of damages in this case, and no party contests the appropriateness of the amount.

The Court also assesses damages in the same amount against the Defendants who did not join the stipulation. The proposed damages figure - $215,005,546.00 - is derived from a thoughtful assessment of KCI's injuries. *See* ECF No. 368 at PageID#: 7228-31. Because Defendants destroyed and otherwise failed to produce meaningful evidence during discovery,[1] Plaintiff's estimates are imprecise. "[A] wrongdoer," however, "is not entitled to complain that damages were not measured with exact precision when the wrongdoer's conduct is responsible for the imprecision." *Digital Filing Sys., LLC v. Aditya Int'l*, 323 F. App'x 407, 419 (6th Cir. 2009). There is considerable evidence, in fact, that the stipulated damages figure is grossly deflated in comparison to Plaintiff's actual injury. Due to Defendants' discovery abuses, it is impossible to know how many VACs they stole, from which sources they received the VACs, which model VACs they stole, what condition the VACs were in when they were stolen, or how many customers Plaintiff lost due to Defendants' fraudulent enterprise.

---

[1] During discovery, Defendants created and submitted false invoices and inventory spreadsheets. *See* ECF No. 360 at PageID#: 6648. A former Healthcare Essentials employee acknowledged in a deposition that Defendants' inventory sheet, produced for litigation, was fabricated. ECF No. 328-1 at PageID#: 5693-94. In reality, Defendants "never knew . . . how many KCI VACs [they] had, nor was there any sort of tracking system or asset number." *Id.* Defendant Ryan Tennebar testified, "I never logged any of my inventory when it came in, I never have. . . . To be honest with you, it's all wrong. I mean, we tried our best to construct [an inventory sheet], but it's — it's not accurate." ECF No. 333-4 at PageID#: 5954. Defendants did not simply fail to maintain business records during their fraudulent venture. *See* ECF No. 360 at PageID#: 6651-53, 6658-59. Defendants wiped their office computers of relevant data, *id.* at PageID#: 6651-52, destroyed physical evidence, *id.* at PageID#: 6653, 6661, and stripped labels off of VAC units, knowing that those labels were critical to Plaintiff's identification of the stolen VACs, *id.* at PageID#: 6661. They also intimidated witnesses. *Id.* at 6652.

(1:14cv549)

Nevertheless, the $215,005,546.00 figure errs on the side of conservative estimates based on that which Plaintiff can prove or reasonably infer. The figure significantly rounds down the likely number of stolen VACs. August 3, 2018, *Evidentiary Hearing*. It accounts for only one supplier because it is impossible to know whether there were others. *Id.* It considers only the VAC models that Defendants actually surrendered during litigation, even though Plaintiff asserts that Defendants possessed other, more valuable models as well. *Id.* It discounts data from 2017 altogether because Healthcare Essentials did business only for a part of that year. *Id.* Finally, although Plaintiff presented evidence that it will continue to suffer lost business due to Defendants' theft, fraud, and infringement, the stipulated-damages figure makes no accounting for harm to Plaintiff's reputation. *Id.*

Instead, the Stipulating Parties estimated Plaintiff's damages by identifying and extrapolating from what information was available. They gauged the number of stolen VACs by dividing Defendants' PayPal receipts and canceled checks by the exchange rate Defendants appeared to use when buying and selling among each other. ECF No. 368 at PageID#: 7229-30. They identified the model types of the stolen VACs by extrapolating from the sample of VACs that Defendants actually surrendered. *Id.* at PageID#: 7230; *see* ECF No. 245. They applied KCI's known average profits and profit margins, not developed for litigation, to the number and models of VACs that they supposed had been stolen. ECF No. 368 at PageID#: 7229-30. All told, the Stipulating Parties' damages estimate is a fair and reasonable assessment of KCI's injury.

Colin Tennebar did not join the stipulation. At the damages hearing, the Court put him

8

(1:14cv549)

on notice that, absent some prompt follow-up, the Court would rule on a damages figure and thereby end the possibility of negotiating a stipulation with KCI. Since the hearing, Colin Tennebar has not notified the Court of a negotiated stipulation or any progress toward such a goal. At no point, either in briefing or at the damages hearing, did Colin Tennebar dispute KCI's damages estimates.[2] Because the stipulated damages figure ($215,005,546.00) is an appropriate assessment of KCI's injuries and because Colin Tennebar has declined to pursue a separately negotiated stipulation or contest the proposed figure, the Court hereby assesses damages in the same amount against him as against the Stipulating Defendants.

The same reasoning applies to the Texas Defendants—Abel Cortez, Anthony Estrada, and Daniel Rader. Although each of them has been properly served with process, ECF Nos. 284, 287, 298, none has pleaded or otherwise defended in this litigation. At the damages hearing, the Court stated, "Mr. Cortez, Mr. Estrada and Mr. Rader are expected here today. They are not physically present. . . . The matter today will proceed against them in their absence." Because the stipulated damages figure ($215,005,546.00) is an appropriate assessment of KCI's injury and because the Texas Defendants have declined to argue otherwise, the Court hereby assesses damages in the same amount against them as against the other Defendants.

### C. Treble Damages Assessment: $645,016,638.00 as to All Defendants

All Defendants, then, are held jointly and severally liable to pay compensatory damages in the amount of $215,005,546.00. ECF No. 381 at PageID#: 7304. That figure includes the

---

[2] Colin Tennebar's only argument on the topic was that he should not be assessed damages at all because Plaintiff's Third Amended Complaint failed to state a claim for relief against him. The Court soundly rejects that argument. *See above*, Section II.A.

(1:14cv549)

market value of the stolen VACs and Plaintiff's lost profits during Defendants' fraudulent enterprise. ECF No. 368 at PageID#: 7230-31. The Stipulating Parties agree that RICO mandates trebling the market-value figure,[3] estimated at $18,242,546.00, but they disagree over whether the lost-profits damages should be trebled. ECF No. 387; ECF No. 389. The non-stipulating Defendants did not brief the matter.

Because all parties that briefed the matter agree that the market-value damages figure should be trebled, the Court rules accordingly. The remaining question is whether the lost-profits damages should also be trebled. For the reasons stated below, the Court awards treble damages on the lost-profits figure as to all Defendants. The lost-profits damages, estimated at $196,763,000.00, should be trebled to $590,289,000.00.

### 1. Mandatory Trebling under RICO and OCA

#### a. Racketeer Influenced and Corrupt Organizations Act (RICO)

The Court has entered default judgment on the RICO allegations as to all Defendants. ECF No. 360 at PageID#: 6665, 6667. Under RICO, "Any person injured in his business or

---

[3] The Stipulating Parties also agree that the Ohio civil theft statute, Ohio Rev. Code § 2307(A)(1)(b)(ii), mandates trebling on the market-value figure. ECF No. 387 at PageID#: 7407; ECF No. 389 at PageID#: 7421, n.3. The Stipulating Defendants argue the market-value figure should be calculated at a figure less than $18,242,546.00 because "many . . . of the wound vacs at issue were used or aftermarket vacs," not new ones. ECF No. 387 at PageID#: 7407-08. This argument comes too late, for two reasons. First, the Stipulating Defendants have already stipulated to a gross damages figure, including the market value of the stolen VACs. ECF No. 381. Second, the argument sounds in speculation, which Defendants have already been foreclosed from arguing. ECF No. 380 at PageID#: 7302. It is ultimately unnecessary for the Court to distinguish between market-value damages and lost-profit damages, but nevertheless, for purposes of this discussion, the Court finds that $18,242,546.00 is a fair calculation of market-value damages.

(1:14cv549)

property by reason of a violation . . . shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c) (emphasis added); *see also* Resolution Trust Corp. v. S & K Chevrolet, 868 F. Supp. 1047, 1062 (C.D. Ill. 1994) ("Under RICO, treble damages are mandatorily assessed upon the finding of liability.").

The Stipulating Defendants argue that RICO's trebling requirement does not apply to lost-profits damages because Plaintiff's lost profits are not predicated on the RICO violation. ECF No. 387 at PageID#: 7406-07. The Stipulating Defendants correctly state the law but misapply the facts.

RICO awards treble damages to "any person injured in his business or property" by reason of illegal racketeering activity. 18 U.S.C. § 1964(c). Lost profits are a business injury, and they are, therefore, subject to trebling under § 1964(c). *See* Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1343 (2d Cir. 1994).

A private plaintiff's entitlement to damages under RICO requires a showing of proximate cause. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008). Damages under RICO are limited to the extent of a plaintiff's injuries caused by the RICO violation itself. "A defendant who violates section 1962 [RICO] is not liable for treble damages to everyone he might have injured by other conduct . . . ." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir. 1984)).

Damages under RICO are assessed to the extent they are based on "some direct relation

11

(1:14cv549)

between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The "direct relation" standard is not exacting. It simply asks "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). If so, then the proximate-cause requirement is satisfied, and the defendant is held liable for the entirety of the damages shown. *Bridge*, 553 U.S. at 654 ("The direct-relation requirement avoids the difficulties associated with attempting 'to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors . . . .'" (quoting *Holmes*, 503 U.S. at 269)).

In this case, Defendants, for at least nine years, stole Plaintiffs' property, rebranded it as their own, and sold and leased it to unwitting customers. ECF No. 276 at PageID#: 4936-40; *see also* ECF No. 360 (default judgment on all counts). As a result of its pattern of theft and fraud, Defendants obtained well over $100,000 per month in leasing revenue, none of which found its way into Plaintiff's hands. ECF No. 276 at PageID#: 4939, ¶ 34. Defendants' long-term enterprise of theft and fraud cost Plaintiff not only the possession of its property in the short term but also the opportunity to profit on that property over time. Defendants' racketeering activity bears a "direct relation" to Plaintiff's lost profits, fairly calculated by the Stipulating Parties at $196,763,000.00 over nine years. *See* ECF No. 368 at PageID#: 7231; ECF No. 381. RICO's proximate-cause requirement, therefore, is satisfied as to the lost-profits damages figure.[4]

---

[4] Even if the link between Defendants' racketeering and KCI's injury were too attenuated or compensation for lost profits were not contemplated under RICO, the Court would nevertheless be obligated to treble damages under the Ohio Corrupt Activities Act. Ohio Rev. Code § 2923.34(E). That statute explicitly embraces "competitive injury and injury distinct from the injury inflicted by corrupt activity." *Id.*; *see below* Section II.C.1.b.

(1:14cv549)

Because the entire damages figure, including both the market-value and lost-profits amounts, was actually and proximately caused by Defendants' underlying RICO violation, the figure must be trebled under 18 U.S.C. § 1964(c). The Court, therefore, awards $645,016,638.00 in damages to Plaintiff.

### b. Ohio Corrupt Activities Act

OCA is Ohio's state-law RICO counterpart. Default judgment has been entered against all Defendants. ECF No. 360 at PageID#: 6665-66. OCA's damages provision, Ohio Rev. Code § 2923.34(E), differs from RICO's damages provision in two relevant respects. First, under OCA, treble damages are only mandatorily assessed if the OCA violation and actual damages are found by clear and convincing evidence. Second, whereas damages under RICO are awarded for injury to "business or property," 18 U.S.C. § 1964(c), OCA awards damages more broadly for "competitive injury and injury distinct from the injury inflicted by corrupt activity." Ohio Rev. Code § 2923.34(E).

The first question, then, is whether the factual allegations in Plaintiff's Third Amended Complaint, taken as true by virtue of the default judgment, establish an OCA violation by clear and convincing evidence. Ohio Rev. Code § 2923.34(E) ("To recover triple damages, the plaintiff shall prove the violation . . . and actual damages by clear and convincing evidence."). The Court's entry of default judgment establishes that Defendants' OCA violation has been proven as a matter of law. ECF No. 360 at PageID#: 6665; *see Conces*, 507 F.3d at 1038 (6th Cir. 2007). The underlying facts of their OCA violation are not open for dispute. The OCA violation, therefore, is proven by clear and convincing evidence.

13

(1:14cv549)

The fact and extent of Plaintiff's damages has also been proved by clear and convincing evidence. Ryan Tennebar and the Entity Defendants stipulated to compensatory damages in the amount of $215,005,546.00. ECF No. 381 at PageID#: 7304. As discussed above, that figure is grounded in provable facts and reasonable inferences. Neither Colin Tennebar nor any of the Texas Defendants contested the proposed damages figure, either in briefing or at the damages hearing. The Court therefore finds actual damages in the amount of $215,005,546.00 proved by clear and convincing evidence.

The second question is whether OCA embraces lost profits as a compensable injury. By its terms, OCA awards damages for "competitive injury and injury distinct from the injury inflicted by corrupt activity." Ohio Rev. Code § 2923.34(E). Lost profits can be classified under either heading.

Because the OCA violation and actual damages have been proven by clear and convincing evidence and because OCA overtly contemplates treble damages for lost profits, the Court trebles the stipulated damages figure under OCA.

**2. Discretionary Trebling under the Lanham Act**

Even if the Court were not obligated to award treble damages under RICO and OCA, it would nevertheless be authorized to do so under the Lanham Act. 15 U.S.C. § 1117(a); *see* 15 U.S.C. § 1125(a). Under § 1117(a), the Court has "a great deal of discretion in fashioning an appropriate remedy" for trademark infringement. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). Enhanced damages may be awarded "subject to the principles of equity . . . ." 15 U.S.C. § 1117(a). The Court has entered default judgment against

14

(1:14cv549)

Ryan Tennebar, Colin Tennebar, and the Entity Defendants (that is, the Ohio Defendants) for a Lanham Act violation. ECF No. 360 at PageID#: 6641, 6665.

In applying "the principles of equity," 15 U.S.C. § 1117(a), the Court considers several factors including, among other considerations, "the defendant's intent to deceive, whether sales were diverted, [and] the adequacy of other remedies . . . ." *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 342 (6th Cir. 2010) (citing *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 174 (4th Cir.2006)).

First, Defendants' intent to deceive in this case is obvious. Defendants presented Healthcare Essentials to unwitting customers as a legitimate distributor of KCI's products. *See* ECF No. 360 at PageID#: 6644 ("We import our inventory and have a direct supply channel with . . . KCI . . . . I work with KCI Corporate on a higher level than a field services rep because of the home-care business I generate for them."). Defendants offered KCI's VACs and VAC components for sale and lease to customers. *See id.* at PageID#: 6643 (offering "$70/Day for the KCI VAC Fleet as first available"). Defendants represented to customers that they had come upon KCI's VACs lawfully. *See id.* at PageID#: 6644 ("Nothing is illegal about this operation.").

Second, business was in fact diverted away from KCI as a result of Defendants' infringement. In an email, Ryan Tennebar told a customer that "KCI didn't pick-up their two KCI VAC Freedoms so we placed one of their KCI VAC Freedoms on [a patient] so he could resume VAC Therapy. . . . [M]ake certain KCI suspends your billing for [a patient] because ours was placed 10/16/2012." *Id.* at PageID#: 6644. A KCI sales representative testified that Defendants' deception caused KCI's reputation to decline. August 3, 2018, *Evidentiary Hearing*.

15

(1:14cv549)

"They thought it was KCI, because, you know, the branding, and it was hard to change once the mind is made up, it was hard to change. And then that's when she said she doesn't want anything to do with KCI at all." *Id.*

Third, as discussed above, there is substantial evidence that the base damages figure ($215,005,546.00) would significantly undercompensate KCI for its losses. *See above*, Section II.B. And the difficulty in proving damages with precision owes largely or entirely to Defendants' misconduct in discovery.

Because the Ohio Defendants' trademark violation was willful, it diverted business away from Plaintiff, and provable damages are inadequate to compensate Plaintiff, the Court awards treble damages totaling $645,016,638.00 against those Defendants.

### III. Conclusion

For the reasons stated above, the Court adopts the proposed order for stipulated damages and trebles that figure. The Court awards $645,016,638.00 in monetary relief jointly and severally against all Defendants.

IT IS SO ORDERED.

| | |
|---|---|
| September 10, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |