PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KCI USA, INC., | ) | CASE NO. 1:14CV549 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| HEALTHCARE ESSENTIALS, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Regarding ECF No. 367] |
| Defendants. | ) | [Resolving ECF No. 383] |

Pending before the Court are KCI's motion for attorney fees and costs (ECF No. 367) and

individual Cavitch Attorneys Komlavi Atsou, Michael R. Rasor, and Eric J. Weiss's motion to

reconsider and revise the July 16, 2018, Order imposing sanctions [ECF No. 363], ECF No. 383.

The Court has been advised, having reviewed the record, the parties' briefs, and the applicable

law. For the reasons stated below, the Court denies the motion for reconsideration and assesses

attorney fees and costs against all Defendants, the Cavitch law firm, and three individual Cavitch

Attorneys.

On August 24, 2018, the Court held an evidentiary hearing on attorney fees and costs.

*See* August 24, 2018, *Minutes of Proceedings*. Parties filed briefs in support of their positions

before (ECF Nos. 367, 372, 377, 402, 421) and after (ECF Nos. 425, 426, 428, 430, 432) the

hearing. All Interested Parties and all but three Defendants[1] were represented at the hearing, and

---

[1] Abel Cortez, Daniel Rader, and Anthony Estrada did not appear. They were
found liable on all counts by default judgment. ECF No. 360. Abel Cortez was present
for a deposition and two telephonic status conferences on February 13, 2018, and March

(continued...)

(1:14CV549)

all represented parties made their positions known to the Court. For the reasons that follow, the Court awards attorney fees and costs to Plaintiff KCI in the following amounts:

As against all Defendants: <u>$2,464,313.55</u> (accounting for $2,349,346.50 in reasonable attorney fees and $114,967.05 in costs);

As against the Cavitch Law Firm: <u>$365,200.67</u> (accounting for $354,419.00 in reasonable attorney fees and $10,781.67 in costs);

As against Attorney Atsou: <u>$365,200.67</u> (accounting for $354,419.00 in reasonable attorney fees and $10,781.67 in costs); and

As against Attorney Rasor: <u>$365,200.67</u> (accounting for $354,419.00 in reasonable attorney fees and $10,781.67 in costs);

As against Attorney Weiss: $290,488.30 (accounting for $282,600.25 in reasonable attorney fees and $7,888.05 in costs);

All amounts are joint and several among Defendants, the Cavitch firm, and the Cavitch Attorneys. KCI is entitled to recover no more than $2,464,313.55, plus post-judgment interest, collectively from Defendants and Interested Parties in satisfaction of this ruling.

## I. Background

On June 29, 2018, the Court entered default judgment against Ryan Tennebar, Colin Tennebar, Healthcare Essentials, LLC, Healthcare Essentials, Inc., Healthcare Essentials Medical Devices, LLC, RT Acquisition, Inc., Abel Cortez, Daniel Rader, and Anthony Estrada

---

[1](...continued)
13, 2018, respectively. Apart from that participation, Defendants Cortez, Rader, and Estrada have not pleaded or otherwise defended during this litigation.

(1:14CV549)

("Defendants").  ECF No. 360.  Shortly thereafter, the Court granted KCI's motion for sanctions

against law firm Cavitch Familo & Durkin Co., LPA ("Cavitch"), and three individual Cavitch

Attorneys Komlavi Atsou, Michael R. Rasor, and Eric J. Weiss ("Cavitch Attorneys").  ECF No.

363.  In several orders issued in the lead-up to the evidentiary hearing, the Court made clear that,

during that hearing, it would not entertain arguments concerning the underlying facts of the

misconduct or whether such conduct merited sanctions in the first place.  *See* ECF Nos. 392, 410,

411.  Instead, evidence and arguments were limited narrowly to "amounts to be paid" in

reasonable attorney fees and costs.  *See* ECF No. 363 at PageID#: 6674 n.2.  Although it was not

discussed at the evidentiary hearing, the Cavitch Attorneys' motion for reconsideration has been

fully briefed.  ECF Nos. 383; 401; 418.  Accordingly, this Order addresses both the motion for

reconsideration (ECF No. 383) and the amounts in attorney fees and costs owed by Defendants

and Interested Parties to KCI as a result of the default judgment (ECF No. 360) and Order

imposing sanctions (ECF No. 363).

Without revisiting every instance of Cavitch and its attorneys' misconduct, it is

instructive to summarize.  In the Order imposing sanctions, the Court ruled that Cavitch and its

attorneys engaged in discovery abuses under Rules 26(g) and 37(b) of the Federal Rules of Civil

Procedure by their:

> (1) misrepresentations made to the Court and KCI during in-person hearings
> regarding Defendants' prior document discovery productions;
>
> (2) direct assistance in the creation of fabricated and inaccurate "evidence"
> produced to KCI in response to Orders from the Court requiring production;
>
> (3) actual knowledge of additional false and misleading documents produced
> in discovery prior to its withdrawal as counsel;

> (4) withdrawing [as] counsel in this case without disclosing any of [their] improprieties and without correcting prior, false document productions and false statements to the Court and KCI.

ECF No. 363 at PageID#: 6678-79.  The Cavitch Attorneys were also sanctioned under 28 U.S.C. § 1927 because their false assertions, fabricated evidence, and failure to correct the record unreasonably multiplied proceedings.[2]  ECF No. 363 at PageID#: 6692.  Finally, the Court suggested that Cavitch and its attorneys' conduct could be sanctioned under the Court's inherent authority.[3]  Id. at PageID#: 6683.  Specific instances of misconduct are discussed as relevant throughout this Order.

KCI argues that Defendants are mandatorily liable for reasonable attorney fees and costs under RICO and OCA (Ohio's state-law RICO counterpart) as a result of the default judgment on those counts (ECF No. 360).  See 18 U.S.C. § 1964(c); Ohio Rev. Code § 2923.34(F).  This liability, KCI argues, is mandatory, and it is separate from any attorney-fee obligation Defendants may have incurred by engaging in litigation misconduct.  ECF No. 421 at PageID#: 7639.

---

[2] Sanctions under 28 U.S.C. § 1927 may not be imposed against a law firm, but only against individual attorneys.  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010).

[3] The Court's authority to impose sanctions is grounded, first and foremost, in its inherent power to control the proceedings that take place before the Court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* (quotation marks omitted).  Thus a federal court   any federal court   may exercise its inherent power to sanction a party or an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46.  The Court may impose sanctions *sua sponte*. *Id.* at 42 n.8; *see also Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir. 2011).  Statutory authority for sanctions is "supplementary."  *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013).  Sanctions imposed under statutes and rules do not "displace[] the inherent power to impose sanctions."  *Chambers*, 501 U.S. at 46.

(1:14CV549)

KCI asks the Court to award an aggregate figure of $2,464,313.55 (comprised of $2,349,346.50 in attorney fees and $114,967.05 in costs). *Id.* at PageID#: 7639-40. It asks for that award to be entirely assessed against all Defendants, and for portions of that total award to be assessed against Cavitch and its attorneys jointly and severally with Defendants and with each other. *Id.* at PageID#: 7640-42. Specifically, it asks the Court to impose $2,152,356.42 (that is, $2,039,180.46 in attorney fees and $113,175.96 in costs) against Cavitch, Attorney Atsou, and Attorney Rasor, and to impose $1,554,637.68 (that is, $1,470,639.69 in attorney fees and $83,997.99) against Attorney Weiss. *Id.* For their part, Cavitch and its attorneys do not offer a precise figure, but, at the hearing, Cavitch's expert witness suggested $50,541.50 would be a fair assessment of reasonable attorney fees resulting from their misconduct. August 24, 2018, *Evidentiary Hearing*, Cavitch Exhibit 1.

KCI is represented by Benesch, Friedlander, Coplan & Aronoff, LLOP ("Benesch").

## II.  Law and Analysis

### A.  Defendants

A defendant who is liable for a RICO violation is mandatorily responsible for reasonable attorney fees and costs of the litigation. 18 U.S.C. § 1964(c) (A prevailing plaintiff "shall recover . . . the cost of the suit, including a reasonable attorney's fee . . . ."). That liability is not discretionary. Defendants have presented information suggesting they are unable to pay attorney fees and costs in any amount, but such information is irrelevant. Defendants are statutorily liable for fees and costs whether or not they can afford to pay it.

Defendants are liable to pay for an amount equal to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461

U.S. 424, 433 (1983). All agree that Benesch's hourly rates are reasonable. Defendants, however, join Cavitch's arguments that the number of billed hours is not reasonable. ECF No. 425; *see* ECF No. 430 at PageID#: 7934-36. In its post-hearing brief, Cavitch expressed skepticism that, "[a]midst a mass of Benesch invoices that total over $2.3 million, [KCI's expert] could not, and did not find one dollar of charges to be excessive." ECF No. 430 at PageID#: 7934 n.1. Cavitch protests, "On some occasions, there were three lawyers attending depositions . . . ." August 24, 2018, *Evidentiary Hearing*; *see* ECF No. 430 at PageID#: 7936. Cavitch does not, however, contend with KCI's expert's suggestion that "sometimes it's more cost effective to have the lawyers there listening to what's going on than have them reading the deposition later." August 24, 2018, *Evidentiary Hearing*.

Because KCI's expert testified to the reasonableness of Benesch's billing time, *see* ECF No. 421-1, and because neither Defendants nor any Interested Parties put forward evidence or testimony to persuasively contest it, the Court finds that the attorney fees and costs submitted by KCI are reasonable. And because Defendants are mandatorily liable for reasonable attorney fees and costs under RICO, the Court rules that all Defendants are liable to KCI for the entire amount billed by Benesch during this litigation. Over and above the damages assessment (*see* ECF No. 438), Defendants are liable to KCI for $2,464,313.55 in litigation expenses (that is, $2,349,346.50 in attorney fees and $114,967.05 in costs).

Pursuant to 28 U.S.C. § 1961, post-judgment interest must be awarded on the entire money judgment, which includes the sum of damages and attorney fees and costs. *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 485, 490 (6th Cir. 2001). In this case, all Defendants are liable to pay $645,061,638.00 in damages, ECF No. 438, and $2,464,313.55 in

attorney fees and costs. Assessment of post-judgment interest is not discretionary. 28 U.S.C. § 1961(a) ("Interest shall be allowed . . . ."). All Defendants, therefore, are also liable for post-judgment interest at the current federal annual rate of 2.56 percent,[4] compounded annually, on the total principal amount of $647,525,951.55. Interest shall begin to accrue from today's date.

## B. Cavitch and Its Attorneys

### 1. Motion for Reconsideration and Revision (ECF No. 383)

The Cavitch Attorneys ask the Court to reconsider and revise its interlocutory order imposing sanctions on them (ECF No. 363). ECF No. 383. Between them, the Cavitch Attorneys and KCI advert to four distinct sources of authority for reconsideration and revision of interlocutory orders, among them Fed R. Civ. Pro. 54(b), 59(e), 60(b)(3), and the Court's inherent authority to entertain such a motion. ECF No. 383 at PageID#: 7350-51; ECF No. 401 at PageID#: 7487-88. Whatever the precise authority, all agree that reconsideration is a rare remedy, *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003), and that it may be granted at the Court's discretion when there is "a need to correct a clear error or prevent manifest injustice." *PNC Bank N.A. v. Stack Container Logistics LLC*, 2015 WL 12778769, at *1 (N.D. Ohio Mar. 19, 2015) (citing *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004)).

"It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a

---

[4] *See* Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/H15/default.htm (Treasury Constant Maturities, 1-year) (weekly average rate from September 12, 2018, to September 18, 2018); 28 U.S.C. § 1961(a).

prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994))."

The Cavitch Attorneys raise two arguments in support of their motion, one procedural and one substantive. First, they argue they were denied due process because they were not timely notified that KCI sought sanctions against them, and as a result they had no meaningful opportunity to defend themselves. ECF No. 383-1 at PageID#: 7353-57. Second, they argue sanctions were inappropriate because the Order imposing sanctions was based on Benesch's "false and inaccurate statements" and other errant evidence. *Id.* at PageID#: 7352-53. The Court addresses each argument in turn. Neither argument is well taken.

The thrust of the Cavitch Attorneys' first argument is that, even though *the Cavitch firm* was on notice of its potential exposure to sanctions,[5] the three individual Cavitch Attorneys were never notified that *they* were also exposed individually until reading KCI's reply brief in support of sanctions (ECF No. 346), by which point the briefing window had closed. ECF No. 383-1 at PageID#: 7355.

This contention is belied by the record and common sense. The Cavitch Attorneys were first put on notice of their exposure to individualized sanctions in May 2015, when Magistrate

---

[5] The Court made the Cavitch firm aware of its potential exposure to sanctions as early as April 15, 2016, when it granted the motion to withdraw. ECF No. 143 at PageID#: 2339-40. Cavitch was again made aware that KCI was likely to pursue sanctions when KCI filed its Bench Brief at the November 9, 2017, show cause hearing. *See* ECF No. 328 at PageID#: 5681-83. KCI formally sought sanctions against Cavitch in its Omnibus Motion for Sanctions, ECF No. 333, on November 17, 2017.

(1:14CV549)

Judge Baughman ordered them to discuss with their clients "the possibility and consequences of joint and several liability of the attorneys and parties for monetary sanctions . . . ." ECF No. 56 at PageID#: 685. Magistrate Judge Baughman warned the individual Cavitch Attorneys about sanctions again in January 2016: "[The Cavitch Attorneys] are signing under Rule 11 that they have given you everything that exists that they know of. . . . They are going to have to answer for it." ECF No. 111 at PageID#: 1882. In the months before KCI filed its Omnibus Motion for Sanctions (ECF No. 333), the Cavitch Attorneys (as individuals) twice articulated awareness of their exposure to sanctions and their willingness to defend themselves or let the Cavitch firm defend them. ECF No. 318 ("Now comes Cavitch, Familo & Durkin Co., LPA and its attorneys, Eric J. Weiss, Michael Rasor, and Komlavi Atsou . . . . Cavitch submits this brief and remains ready to defend and discredit the accusations lodged against Cavitch and its attorneys."); ECF No. 329 (same). Both briefs were signed by Attorneys Weiss, Atsou, and Rasor.

When KCI filed its Omnibus Motion for Sanctions (ECF No. 333), there was no suggestion or indication that Cavitch and the Cavitch Attorneys would be separately represented. KCI's motion made explicit references to the misconduct of individual attorneys, and it quoted Magistrate Judge Baughman's warnings to the Cavitch Attorneys. *See* ECF No. 333-1 at PageID#: 5927. Attached to Cavitch's opposition (ECF No. 341) were affidavits individually sworn and signed by Attorneys Weiss, Atsou, and Rasor (ECF Nos. 341-15; 341-16; 341-17). The Attorneys not only had an opportunity to be heard    they were heard through affidavits submitted in their defense.

The Cavitch Attorneys plainly were on notice that KCI's pursuit of sanctions against Cavitch included a pursuit of sanctions against them as individuals. But even if they had not

demonstrated their actual awareness of misconduct allegations and the possible consequences, the Court would infer it using common sense. Although courts routinely sanction law firms under Rules 26(g) and 37(b), those rules speak of sanctions against *attorneys*, not firms. The Court has located no precedent in which a court has awarded sanctions against a law firm based on its attorneys' misconduct without also sanctioning the attorneys themselves. 28 U.S.C. § 1927, for its part, applies *only* to attorneys as individuals, not to law firms. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010). It would be profoundly unusual for the individual Cavitch Attorneys to be excluded from KCI's motion for sanctions, particularly given the past warnings from two judicial officers and the specific allegations of their misconduct in KCI's motion.

In a similar vein, the Cavitch Attorneys argue that they were denied due process because the Court did not hold an evidentiary hearing to assess whether their conduct was sanctionable. ECF No. 383-1 at PageID#: 7354-56. The November 9, 2017, show cause hearing, which preceded KCI's Omnibus Motion for Sanctions by eight days, was not held for the purpose of evaluating attorney misconduct. *See* ECF No. 331 at PageID#: 5727 (Cavitch and its attorneys' willingness to defend themselves was "not an issue . . . at this hearing"). An evidentiary hearing is not a prerequisite to a finding of sanctionable conduct. *Union Planters Bank v. L & J Dev. Co., Inc.*, 115 F.3d 378, 385 (6th Cir. 1997). The Court finds that the Cavitch Attorneys were provided due process because they had ample notice of the sanction allegations and an opportunity to brief the matter and submit evidence.

The Cavitch Attorneys also argue that they should not have been sanctioned because they did not engage in sanctionable conduct. The Court's Order imposing sanctions, they say, was

(1:14CV549)

based on Benesch's misrepresentations and other falsehoods.  ECF No. 383-1 at PageID#: 7342-47.  The facts underlying the Order imposing sanctions (ECF No. 363) have already been fully and fairly litigated by competent counsel in an adversarial process.  *See* ECF Nos. 333, 341, 346, 348, 349, 354.  The Court has already sifted through evidence and made factual findings based on indisputable record evidence.  ECF No. 363.  Absent any new evidence (which the Cavitch Attorneys do not present), the Court declines the invitation to reopen the factual disputes it has already closed.  *See McConocha,* 930 F. Supp. at 1184.

The Court therefore finds that the Cavitch Attorneys were afforded due process prior to the issuance of the Order imposing sanctions, and it is satisfied that the factual findings drawn in the Order imposing sanctions are accurate and based on the evidence.  For those reasons, the Cavitch Attorneys' motion for reconsideration and revision of the Order imposing sanctions is denied.

### 2. Attorney Fees and Costs: Governing Law and Application

Courts have broad discretion to calculate fee awards that arise from litigation sanctions.  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017); *cf. Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  Nevertheless, such fee awards must be directly traceable to the litigation misconduct.  *Goodyear*, 137 S. Ct. at 1187.  That is, the innocent party may only recover those fees that were the but-for result of the misconduct.  *Id.*  Such arithmetic is necessarily imprecise, particularly when the misconduct at issue is not embodied by a single instance of bad behavior    a missed deposition, for example, or untimely production of a batch of documents    but rather a pattern of obstreperousness and

11

deceit, as was the case here. *See* ECF No. 363. "The essential goal . . . is to do rough justice, not to achieve auditing perfection." *Goodyear*, 137 S. Ct. at 1187 (quotation marks and citations omitted).

In this case, all involved agree that the Court may award fees to KCI only insofar as those fees actually resulted from Cavitch and its attorneys' misconduct. The parties dispute the method the Court may use to calculate that award. Cavitch and its attorneys resist the notion that, since *Goodyear*, it is ever appropriate for a court to select a midpoint in the litigation and award all fees incurred from that point forward. *See* ECF No. 428 at PageID#: 7884-85; ECF No. 402 at PageID#: 7503. KCI posits that a midpoint-forward approach is appropriate if the litigation would have ended but for the attorney misconduct. ECF No. 421 at PageID#: 7640.

The dispute is easily resolved, at least in the abstract. Six paragraphs of the *Goodyear* case are dedicated to explaining that there are some cases in which attorney fees and costs ought to be shifted entirely to the sanctioned parties "from . . . some midpoint of a suit, in one fell swoop." *Goodyear*, 137 S. Ct. at 1187 (citing, as an example, *Chambers v. NASCO*, 501 U.S. 32 (1991)). The *Goodyear* Court concluded that such a technique was not appropriate on the facts of the case, but it did not take the technique off the table for lower courts.

Shifting all fees from some midpoint of the litigation is not inconsistent with *Goodyear*'s but-for standard. If a court finds that, *but for* attorney misconduct, litigation would have ended altogether on Monday, then all fees and costs incurred from Tuesday forward are the direct, but-for result of the attorney misconduct. In such a case, it would be pointless to comb through the innocent party's billing records line by line. Those fees are eligible for wholesale shifting. Such

a case is "exceptional," *Goodyear*, 137 S. Ct. at 1187, only because it is the rare instance where one can say with relative certainty that some litigation would have *ended* but for attorney misconduct. Rarely does attorney misconduct have such a drastic effect as to obscure or destroy case-ending evidence. The pertinent question for the Court is whether this is such a case.

KCI advances two bright lines as "midpoints" of the litigation, from which points forward the Court should shift all fees and costs that KCI incurred. ECF No. 426 at PageID#: 7857. First, it asks the Court to shift all fees and costs incurred between April 1, 2015, and June 30, 2018, totaling $2,152,356.42.[6] ECF No. 421 at PageID#: 7641. *But for* Attorneys Atsou and Rasor's misrepresentations to the Court in late March 2015, KCI argues, a preliminary injunction would have been promptly granted, and the litigation (except damages proceedings, not included in KCI's calculation) would have ended immediately. *Id.* at PageID#: 7640-41. In the alternative, KCI asks the Court to shift all fees and costs incurred between April 1, 2016, and June 30, 2018, totaling $1,553,326.08.[7] ECF No. 426 at PageID#: 7857. KCI theorizes that, had Cavitch and its attorneys produced relevant information on the "Jurinnov Hard Drive" when it came into their possession, or had they satisfied their obligation of candor to the Court on their

---

[6] That figure reflects $2,039,180.46 in attorney fees and $113,175.96 in costs. ECF No. 421 at PageID#: 7641.

[7] This figure reflects $1,470,639.69 in attorney fees and $82,686.39 in costs. ECF No. 426 at PageID#: 7857. There is a discrepancy between KCI's billing records and KCI's expert testimony. The billing records for April 1, 2016, through June 30, 2018, indicate attorney fees amounting to $1,482,845.00, ECF No. 421-2, but Mr. DeSantis (KCI's expert) testified to fees amounting to $1,470,639.39. *See* ECF No. 421-1 at PageID#: 7636; ECF No. 426 at PageID#: 7857; August 24, 2018, *Evidentiary Hearing*. The Court's analysis holds KCI to its expert's testimony, not its billing records.

withdrawal, the litigation (save damages proceedings) would have ended then and there, just before April 2016. *Id.*

Cavitch and its attorneys offer a far more limited perspective on the fees and costs caused by their misconduct. At the evidentiary hearing, through their expert witness, Cavitch and their attorneys presented a line-by-line, annotated itemization of fees (but not costs) that, based on Benesch's billing records, appeared to correspond to the conduct for which they were sanctioned. August 24, 2018, *Evidentiary Hearing*, Cavitch Exhibit 1. The fees that Cavitch suggests correspond to their misconduct span from September 2016 to March 2018, and they range from $0.00 to $16,818.50 in any given month.[8] *Id.* Cavitch's expert witness testified that, all told, Cavitch and its attorneys should be held liable for $51,541.50 in attorney fees resulting from their misconduct. *Id.*

Both of KCI's proposals assume that, apart from damages, all investigation and litigation would have immediately ceased absent Cavitch and its attorneys' misconduct. ECF No. 421. In March 2015, Attorneys Atsou and Rasor represented to Magistrate Judge Baughman that they had complied with KCI's discovery requests    that they had produced complete and accurate invoices and inventory spreadsheets and identified all of the VACs in their possession. ECF No. 363 at PageID#: 6675; ECF No. 49 at PageID#: 365-70. Those representations, supported by an

---

[8] In her line-item annotations, Cavitch's expert also identified corresponding fees that KCI incurred between January 2016 and August 2016, but she did not include them in her summary report. *Compare* August 24, 2018, *Evidentiary Hearing*, Cavitch Exhibit 1, *with id.*, Exhibit 5. These unaccounted-for fees amount to approximately $3,368.00. Because, as explained below, the Court awards KCI all fees and costs incurred during this period, the discrepancy is irrelevant. Nevertheless, these omissions, unexplained at the evidentiary hearing, are troubling.

affidavit the Attorneys prepared and submitted to the Court, were untrue. ECF No. 363 at PageID#: 6683. According to KCI, if the parties and the Court had had the benefit of honest, non-fraudulent production, all manner of inculpatory material from Ryan Tennebar's hard drive inevitably would have led the Court to enter a preliminary injunction which, KCI argues, would have led immediately to a finding of damages liability on all counts in turn. Instead, Magistrate Judge Baughman denied the motion for a preliminary injunction based on Cavitch and its attorneys' insistence that all relevant discovery had been produced. ECF No. 426 at PageID#: 7858.

KCI's alternative argument (based on an April 1, 2016, midpoint) relies on similar logic. See id. at PageID#: 7857. In late March 2016, the Cavitch Attorneys arranged for a third-party consultant (Jurinnov) to scan Defendant Ryan Tennebar's hard drive, and they came into possession of all the material on that hard drive. ECF No. 341 at PageID#: 6178. The Cavitch Attorneys uncovered a trove of Ryan Tennebar's emails, revealing that (1) Defendants were undoubtedly liable on KCI's claims and (2) Defendants and Cavitch's conduct during discovery had been fraudulent. See ECF No. 333-1 at PageID#: 5922-23; ECF No. 363 at PageID#: 6683-93.

After they were discharged by their clients in early April 2016, the Cavitch Attorneys moved to withdraw as counsel. ECF No. 135. Having uncovered "troubling information" on the "Jurinnov hard drive" (the hard drive mirror image reflecting the contents of Defendant Ryan Tennebar's computer), they filed an *ex parte* brief with the Court on their withdrawal, purportedly to enlighten the Court about the reasons they could not continue representing

(1:14CV549)

Defendants. ECF No. 136. But the Cavitch Attorneys did not take that *ex parte* opportunity to alert the Court that it had been defrauded, nor did they take the opportunity to correct the record as to their prior misrepresentations. *See* ECF No. 233 at PageID#: 4222; ECF No. 363 at PageID#: 6676 n.5.

Before their withdrawal as counsel, the Cavitch Attorneys did not produce any information from the newly-uncovered Jurinnov hard drive (that is, the material on Ryan Tennebar's computer). ECF No. 253. KCI eventually obtained that material on October 6, 2016, not through the ordinary channels of party discovery but through a third-party subpoena after thorough investigation. *Id.* KCI argues that, *but for* the Cavitch Attorneys' failure to produce relevant information and failure to make required disclosures to the Court on their withdrawal, KCI would have come into possession of the Jurinnov hard drive in late March or early April 2016. *See* ECF No. 426 at PageID#: 7857. This litigation, KCI argues, should have been over then and there. *Id.*

Neither of these bright lines is compelling, however. In its primary argument, KCI suggests that a preliminary injunction order would have all but ended the case. But the Court eventually did enter a preliminary injunction against Defendants on June 29, 2016, ECF No. 161, but the Court did not find KCI liable for damages until two years later. ECF No. 360. In its alternative argument, KCI suggests that production of the Jurinnov hard drive would have all but ended the case. But KCI eventually did obtain the Jurinnov hard drive on October 6, 2016, ECF No. 253, and yet, litigation persisted. Even after the Court entered a preliminary injunction and KCI obtained the Jurinnov hard drive, KCI spent roughly eighteen months filing motions and

16

(1:14CV549)

building a case.  *See* [ECF No. 359](KCI's final motion prior to default judgment [ECF No. 360]

filed on March 30, 2018).  Neither of KCI's bright-line arguments advances compelling reasons

to think the litigation would have altogether ceased at any specific, definite point in time but for

Cavitch and its attorneys' misconduct.[9]

Cavitch's line-item allocations, on the other hand, would grossly undercompensate KCI

and Benesch for Cavitch and its attorneys' misconduct.  Cavitch's expert acknowledged on cross-

examination that "virtually all" of the billing entries she marked as relevant featured the name

"Cavitch," the word "sanctions," or the term "show cause."  August 24, 2018, *Evidentiary

Hearing*.  That is, the only billing entries Cavitch's expert deemed relevant were the entries

specifically dedicated to pursuing sanctions themselves.

Such a theory does not remotely capture *Goodyear*'s meaning.  *Goodyear* discusses legal

expenses that have nothing to do with the fees and costs associated with pursuing sanctions

themselves.  Such fees and costs, presumably, are taken for granted.  *Goodyear* gives examples

of but-for litigation expenses including fees and costs associated with taking depositions, drafting

motions, and conducting expert discovery.  [137 S. Ct. at 1187](link).  It cites another Supreme Court

case, *Fox v. Vice*, for further examples such as fees spent avoiding default judgment on frivolous

claims, the costs associated with removal to (and litigation in) federal court, and the marginal

cost of hiring more expensive counsel for high-stakes claims.  [563 U.S. 826, 837-38 (2011)](link).  To

---

[9] The Court recognizes that Defendants' obstinacy and litigation misconduct
persisted after Cavitch's withdrawal, and KCI should have been able to build its case
more quickly than it did.  The Court nevertheless draws a line at October 6, 2016 to
ensure that Cavitch and its attorneys are held responsible only for the expenses that *they*
caused, not those caused by Defendants alone.

be sure, fees and costs dedicated to pursuing sanctions *are* the but-for results of the underlying misconduct.  But Cavitch's expert's suggestion that those are the *only* amounts that resulted from Cavitch and its attorneys' misconduct borders on the absurd.

Cavitch and its attorneys also suggest that their misconduct was not the cause of KCI's incurred fees and costs because Defendants themselves (Cavitch's clients) were so obstinate that they would not have allowed production of inculpatory evidence in any event.  *See* ECF No. 430 at PageID#: 7943.  That contention misapprehends the law and the facts.  *Goodyear* demands a but-for standard, not a proximate-cause standard.  It is not legally relevant whether, as Cavitch suggests, Defendants were "the primary wrongdoers."  *Id.*  Attorney misconduct, in particular fabrication of evidence and misrepresentations to the Court (ECF No. 363 at PageID#: 6683-92), was part and parcel of Defendants' strategy of obstruction.  No matter how resolute Defendants' resistance to produce discovery, such frauds on the Court could only have been conducted and facilitated by attorneys.  And, of course, the Cavitch Attorneys' failure to satisfy their duty of candor to the Court, itself the but-for cause of countless motions, hearings, and orders in this case, is a class of misconduct uniquely pertinent to attorneys.  *See* Ohio R. Prof. Cond. 3.3.

The most obvious tranche of unnecessary expenses are those that occurred between January 25, 2016, when the Cavitch Attorneys falsely confirmed to Magistrate Judge Baughman that they had fully complied with all discovery obligations, and October 6, 2016, when KCI, by its own efforts, came into possession of the discovery it had expected long before.  Although Cavitch's misrepresentations began as early as March 2015, *see* ECF No. 49, ECF No. 363 at PageID#: 6683-84, their deceit was especially pointed at the Status Conference with Magistrate

18

(1:14CV549)

Judge Baughman on January 25, 2016. At that conference, when asked whether the Cavitch firm had developed a chain of custody as to the VAC units in Defendants' possession, Attorney Atsou responded, "We bought it, we produced it, we have receipts for them." ECF No. 111 at PageID#: 1851-52. Shortly thereafter, he insisted, "We have produced the units that we have, the complete list," *id.* at PageID#: 1852-53, and, "We have produced everything to them," *id.* at PageID#: 1868. At the same conference, Attorney Rasor told Magistrate Judge Baughman, "We believe we have done everything that you asked us to do with all of the VACs, all of the VACs on the list [of thirty-five]." *Id.* at PageID#: 1869. Four days later, on January 29, 2016, Attorney Atsou sent an email instructing client Ryan Tennebar to call him "immediately" so that they can "can (1) arrange the imaging of [his] computer . . . (2) compile the contracts and additional records for the 35 VACs with serial numbers we disclosed to KCI." ECF No. 333-9 at PageID#: 5993. On October 6, 2016, more than eight months later, KCI finally gained access to all the information the Cavitch Attorneys had long before insisted they had already produced. *See* ECF No. 253.

Between January 25, 2016, and October 6, 2016, the docket featured such events as motions to quash subpoenas, motions to compel compliance, a motion and a hearing on a preliminary injunction (later amended, then modified again), a motion to dismiss for lack of subject-matter jurisdiction, a motion for judgment on the pleadings, an emergency motion to show cause (itself accompanied by thirteen docket entries including briefs, orders, and a hearing), a contempt order, lawyer depositions, and another motion to show cause (accompanied by eight docket entries of its own), among other disputes. That roughly eight-month period of whiplash litigation concluded with several orders ensuring that KCI had access to physical and digital

19

evidence that the Cavitch Attorneys insisted long before they had already produced. *See* ECF Nos. 254, 260, 263. Most of those expenses occurred after the Cavitch Attorneys had withdrawn as Defendants' counsel of record. All of those expenses occurred as a but-for result of the Cavitch Attorneys discovery abuses and failure to be candid with the Court. *See* ECF No. 363.

Bearing all that in mind, the Court finds that KCI incurred $705,193.63 in attorney fees and costs that were actually caused by Cavitch and its attorneys' misconduct.[10][11] That figure accounts for two distinct calculations of KCI's attorney fees and costs. First, it holds Cavitch to its expert's concession and accounts for the fees that Cavitch's expert acknowledged were the result of the Cavitch Attorneys' misconduct. That figure totals $50,541.50. August 24, 2018, *Evidentiary Hearing*, Cavitch Exhibit 1. Second, the total figure accounts for all of KCI's litigation expenses incurred between January 25, 2016, when the Cavitch Attorneys repeatedly represented to Magistrate Judge Baughman that they had fully satisfied their discovery obligations, and October 6, 2016, when KCI obtained the Jurinnov hard drive and reached the position it should have occupied more than eight months before. That figure totals

---

[10] With respect to the Cavitch firm, no portion of this amount derives from violations of 28 U.S.C. § 1927. As explained above, sanctions cannot be imposed against law firms under § 1927. *See BDT Prods., Inc.*, 602 F.3d at 751.

[11] Attorney Weiss made his first appearance in this litigation on January 22, 2016, but KCI's expert opined that Attorney Weiss did not participate in any sanctionable conduct until late March 2016, when the Cavitch Attorneys received the Jurinnov hard drive and withdrew as counsel without satisfying their duty to produce relevant discovery or to be candid with the Court about their clients' and their own discovery violations. ECF No. 421-1 at PageID#: 7646. The Court finds that Attorney Weiss's misconduct is responsible for fees and costs incurred on and after April 1, 2016.

(1:14CV549)

$654,652.13.[12]  Combined, the two amounts total $705,193.63.  To avoid double-counting, $13,004.50 is subtracted from the combined figure, resulting in a total amount of $692,864.35.

### 3. Ability to Pay

A federal district court is obligated to consider whether an attorney is able to pay a sanction award imposed under 28 U.S.C. § 1927.  *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 643, 646 (6th Cir. 2009).  All agree, however, that the Court need not consider an attorney's ability to pay sanctions imposed under Fed. R. Civ. Pro. 26(g)(3) and 37(b)(2)(C). ECF No. 426 at PageID#: 7864; ECF No. 428 at PageID#: 7897; *see Williamson v. Recovery Ltd. P'ship*, 2014 WL 1884401, at *14 (S.D. Ohio May 9, 2014) (citing *Telechron, Inc. v. Intergraph Corp.*, 91 F.3d 144 (Table), at *2 (6th Cir. 1996).  The relevant question for the Court, then, is not whether it *must* consider Cavitch and its attorneys' ability to pay the cost of the sanctions, but rather whether it *should* consider those arguments.

In cases in which attorney sanctions are *punitive*, it is appropriate for the court to take into account the sanctioned attorneys' ability to pay in determining the appropriate amount to be paid.  *See White v. Gen. Motors. Corp., Inc.*, 908 F.2d 675, 685 (10th Cir. 1990).  In *White*, the Tenth Circuit Court of Appeals explained, "Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages.  It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages."  *Id.*

---

[12] This accounts for $633,764.00 in attorney fees and $21,563.35 in costs.  These calculations rely on Benesch's billing entries, which account for costs on a monthly basis. Because, under this calculation, January 2016 and October 2016 are only partial months, the Court assesses costs proportionally: $334.80 for the final six days of January 2016, and $343.41 for the first five days of October 2016.

(1:14CV549)

The Cavitch Attorneys point out that, like Rule 11 sanctions, "sanctions imposed under [28 U.S.C.] § 1927 or pursuant to a court's inherent authority are punitive."[13] *Red Carpet Studios Div. of Source Advantage v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). Punitive sanctions are imposed to deter future misconduct, not primarily to compensate the innocent party. It makes sense, then, that the Sixth Circuit in *Garner* insisted that the district court evaluate the sanctioned litigants' and attorneys' ability to pay the cost of the sanction. 554 F.3d at 642-43, 646. In that case, the attorney sanctions arose under § 1927. *Id.* at 633. Sanctions arising under Fed. R. Civ. Pro. 26(g)(3) are arguably also punitive, not compensatory. Rule 26(g)(3) "is designed to curb discovery abuse" and it "parallels . . . Rule 11." Advisory Comm. Notes on Fed. R. Civ. Pro. 26(g), 1983 Amendments.

Sanctions imposed under Rule 37(b)(2)(C), however, are patently compensatory. Under the Rule, "the court must order the [sanctioned party or attorney] . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C).

Whereas "it is hornbook law" that inability to pay should lead the Court to mitigate sanction awards that are punitive in nature, *see White*, 908 F.2d at 685, it makes no sense to do the same when the sanction awards are compensatory. Indeed, Rule 37(b)(2)(C) leaves the Court no choice    it "must order [the sanctioned attorneys] . . . to pay the reasonable expenses,

---

[13] *Goodyear* casts doubt on the conclusion that inherent-authority sanctions are always punitive in nature. *See* 137 S. Ct. at 1188.

including attorney's fees, caused by the failure . . . ."  The Rule allows the Court to depart from that conclusion only when the violation was "substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. Pro. 37(b)(2)(C).  Neither Cavitch nor the Cavitch Attorneys argue that either exception should apply.

The same conclusion applies to the Cavitch firm.  KCI argues that there is no authority suggesting sanction awards should be mitigated when a law firm (as opposed to an individual attorney) cites inability to pay.  ECF No. 426 at PageID#: 7864.  Because compensatory sanctions are mandatory under Fed. R. Civ. Pro. 37(b)(2)(C), the Court has no occasion to evaluate KCI's argument in this respect.

Because total compensation for misconduct is mandatory under Rule 37(b), the Court declines to consider Cavitch or its attorneys' stated inability to pay the cost of the sanctions.

### 4.  Apportionment of Responsibility

Cavitch and its attorneys posit that the total amount of KCI's attorney fees and costs should be apportioned among Defendants, on one hand, and Cavitch and its attorneys, on the other.  Cavitch's argument on this point reduces to a recitation of *Goodyear*'s holding: Sanction awards, when they involve attorney fees and costs, should be allocated between Defendants and their attorneys to the extent that each one caused their opponents to incur fees and costs in the first place.  *See* ECF No. 430 at PageID#: 7947-51.  Cavitch emphasizes that, if a court apportions liability to pay for a sanctions award, it must do so only against the but-for standard, not based on relative culpability of Defendants and the Cavitch Attorneys.  *Id.* at PageID#: 7950-51.

As discussed above, Cavitch and its attorneys' misconduct was indeed the but-for cause of $705,193.63 in KCI's attorney fees and costs. It is, of course, also true that Defendants' own discovery abuses (or at least, Ryan and Colin Tennebar's discovery abuses) were the but-for cause of that amount and more. They filed false affidavits, refused to produce relevant communications and documents, fabricated invoices and inventory spreadsheets, destroyed digital and physical evidence, and intimidated at least two witnesses. ECF No. 360 at PageID#: 6641-53.

The Cavitch Attorneys and the Defendants acted in concert to abuse the discovery process and defraud the Court. They worked together, for instance, to fabricate inventory spreadsheets they submitted for discovery. *Id.* at PageID#: 6688. And although the Cavitch Attorneys had an obligation to inform the Court of their former clients' and their own discovery violations, *see id. at PageID#: 6688-89*, there is likely some truth to Cavitch's expert's suggestion that, even with the benefit of forthcoming attorneys, Defendants would not have been pliant litigants. *Cf., e.g.*, ECF No. 333-10 at PageID#: 5996 (Defendant Ryan Tennebar: "Obtain [serial] numbers to build a f[***]ing case against me? I don't think so.").

None of the above absolves Cavitch or its attorneys of their misconduct. Even with obstreperous clients, they had a clear duty to produce relevant information in discovery, to be truthful to the Court, to correct the record when they were untruthful or discovered they had been mistaken, and to apprise the Court of their clients' and their own discovery violations. Nor does any of the above disturb the but-for chain of causation between the Cavitch Attorneys' misconduct and KCI's incurrence of fees and costs. Had the Cavitch Attorneys satisfied their

discovery obligations or other ethical obligations, the Court would have been able to step in to prevent the litigation from needless protraction.

Because Defendants' own discovery behavior was equally harmful to KCI, however, Cavitch and its attorneys should not bear the full cost of the misconduct. "Rule 37 identifies attorneys . . . overseeing [] discovery as possible subjects of sanctions along with their clients and vests the trial court with broad discretion to apportion fault between them . . . ." *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993). And although it is merely persuasive authority in this context, Ohio law *requires* courts to consider apportionment of responsibility between attorneys and their clients under the state-law counterpart to Rule 37 sanctions. *Bellamy v. Montgomery*, 934 N.E.2d 403, 410 (Ct. App. Ohio 2010).

The Court recognizes the magnitude of Defendants' own litigation misconduct and the degree to which their misconduct was intertwined with that of Cavitch and its attorneys. The Court finds that each group (Defendants on one hand, Cavitch and its attorneys on the other) should bear responsibility for one-half of the expenses resulting from their concerted misconduct.[14] The Court has concluded that Defendants' and Cavitch and its attorneys' concerted litigation misconduct resulted in $705,193.63 in fees and costs incurred by KCI. Because the Court apportions financial responsibility for that incurrence one-half to Defendants

---

[14] As discussed above, all Defendants are already liable for the entire amount of KCI's reasonable attorney fees and costs ($2,464,313.55) because of their liability on the merits. This finding does not increase that figure. It simply establishes an additional basis for certain of the Defendants' fee-shifting liability.

(1:14CV549)

and one-half to Cavitch and its attorneys, the latter are responsible to pay a total amount of $365,200.67.[15]

### 5. Post-Judgment Interest

Post-judgment interest must be awarded "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). In the Sixth Circuit, that statutory requirement applies to attorney fees and costs as well as damages. *Associated Gen. Contractors*, 250 F.3d at 485, 490. In *Associated General Contractors*, post-judgment interest accrued on attorney fees awarded pursuant to a statutory fee-shifting provision. *Id.* at 483; *see* 42 U.S.C. § 1988. In this case, by contrast, the question arises whether post-judgment interest should accrue for attorney fees awarded as sanctions for litigation misconduct.

The plain language of 28 U.S.C. § 1961 strongly suggests that post-judgment interest is mandatory for attorney fees awarded as sanctions. The statute demands post-judgment interest on "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

In *Associated General Contractors*, the Sixth Circuit explained that post-judgment interest is nothing more or less than compensation for lost value that results from delayed payment. "Because a dollar today is worth more than a dollar in the future, the only way a party can be made whole is to grant interest from the time of the award of fees. Any other rule would effectively reduce the judgment for attorneys' fees . . . ." 250 F.3d at 485 (quotation marks and citation omitted). The court's reasoning in *Associated General Contractors* applies just as well

---

[15] Attorney Weiss is liable to pay $290,488.30. He is responsible for a lesser amount than Attorneys Atsou and Rasor because the first instance of his misconduct occurred in late March or early April 2016. *See* ECF No. 421-1 at PageID#: 7646.

to fees and costs that derive from litigation sanctions as to fees and costs that derive from an ordinary fee-shifting statute. A prevailing party is entitled to the full value of its judgment.

The Court therefore rules that 28 U.S.C. § 1961 applies to the sanction amounts entered against Cavitch and its attorneys, and the Court awards post-judgment interest on those amounts. Pursuant to 28 U.S.C. § 1961, post-judgment interest shall accrue on all awards at the current federal annual rate of 2.56 percent,[16] compounded annually. Interest shall begin to accrue from today's date.

### III. Conclusion

For the foregoing reasons, the Court denies the Cavitch Attorneys' motion to reconsider and revise the July 16, 2018, Order imposing sanctions [ECF No. 363] (ECF No. 383). The Court orders that all Defendants are jointly and severally liable to KCI for $2,464,313.55 in attorney fees and costs. The Court also orders that the Cavitch firm, Attorney Komlavi Atsou, and Attorney Michael R. Rasor are each liable to KCI for $365,200.67, and Attorney Eric J. Weiss is liable to KCI for $290,488.30. All amounts are owed jointly and severally, and all amounts are subject to post-judgment interest as described herein. The Court also clarifies that

---

[16] *See* Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/H15/default.htm (Treasury Constant Maturities, 1-year) (weekly average rate from September 12, 2018, to September 18, 2018); 28 U.S.C. § 1961(a).

(1:14CV549)

Defendants are obligated to pay post-judgment interest on their damages liability (*see* ECF No. 438).

       IT IS SO ORDERED.

 September 19, 2018                           */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                                 United States District Judge